**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| HILMER SCHOENBAUM, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 4:05-CV-01108-ERW<br><br>*Consolidated with:* |
| Plaintiff, | ) ) ) | |
| | ) | Case No. 4:05-CV-1174-ERW |
| | ) | Case No. 4:05-CV-1175-ERW |
| vs. | ) | Case No. 4:05-CV-1190-ERW |
| | ) | Case No. 4:05-CV-1218-ERW |
| | ) | Case No. 4:05-CV-1223-ERW |
| E.I. DUPONT DE NEMOURS AND | ) | Case No. 4:05-CV-1229-ERW |
| COMPANY, PIONEER HI-BRED | ) | Case No. 4:05-CV-1230-ERW |
| INTERNATIONAL, INC., and MONSANTO | ) | Case No. 4:05-CV-1311-ERW |
| COMPANY, | ) | Case No. 4:05-CV-1445-ERW |
| | ) | Case No. 4:05-CV-1478-ERW |
| Defendants. | ) | Case No. 4:05-CV-1853-ERW |
| | ) | Case No. 4:05-CV-2314-ERW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH**
**DEFENDANTS E.I. DUPONT DE NEMOURS AND COMPANY**
**AND PIONEER HI-BRED INTERNATIONAL, INC., CONDITIONAL**
**CERTIFICATION OF SETTLEMENT CLASSES, AND APPROVAL**
**OF NOTICE TO BE FURNISHED TO SETTLEMENT CLASSES**

**Dated:** July 22, 2009

## TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES …….......………………………………………………....   iii

I.   PRELIMINARY STATEMENT ………………………………………………....   1

II. STATEMENT OF FACTS ……………………………………………………   2

    A. Background of the Litigation …..………………………………………………   2

    B. The Settlement with Pioneer ………………………………………………....   6

        **1.**   The Terms ………………………………………………………………....   7

        **2.**   The Settlement Classes …………………………………………………..   8

III. ARGUMENT …………………………………………………………………....   10

    THE COURT SHOULD PRELIMINARILY APPROVE THE
    SETTLEMENT, CONDITIONALLY CERTIFY THE SETTLEMENT
    CLASSES, APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES,
    APPROVE THE PROPOSED NOTICE TO CLASS MEMBERS, AND
    SCHEDULE A FAIRNESS HEARING   .…………………………………………   10

    A. The Court Should Preliminarily Approve the Settlement …………………….   10

        1.   Applicable Standards Pertaining to Preliminary Approval
           of Settlements ………………………………………………………   10

        2.  The Court Should Preliminarily Approve the Settlement ……………....   15

    B. The Court Should Conditionally Certify the Settlement Classes and
       Appoint Plaintiffs as Representatives of Their Respective Class(es) …………   20

        1.   The Proposed Settlement Classes …………………………………….   20

        2.   Standards for Certifying Settlement Classes ………………………….   22

        3.   The Settlement Classes Satisfy All of the Rule 23 Prerequisites ………….   24

            (a)   The Classes Are So Numerous as to Make
               Joinder of All of Their Members Impracticable …………………..   24

Pages

(b)   There Are Questions of Law or Fact Common to All Class
Members …………………………………………………………   25

(c)   Plaintiffs' Claims Are Typical of Those of Absent
Class Members…………………………………………………...   26

(d)   Plaintiff Will Fairly and Adequately Represent the
Interest of Absent Class Members …………………………   28

(e)   Questions of Law or Fact Common to All Settlement Class
Members Predominate …………………………………………   31

(f)   Class Treatment Is Superior to Alternative Forms of
Adjudication of These Claims ……………………………………   34

C.  The Court Should Approve the Proposed Notice to Class Members ………….   37

IV.  CONCLUSION ……………………………………………………………….   43

-ii-

# TABLE OF AUTHORITIES

**CASES**                                                                                   **Page(s)**

*Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522
   (S.D. Fla. 2000).........................................................................................................30

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007)......................................13

*Airline Stewards & Stewardesses Association v. Trans World Airlines, Inc.*, 630 F.2d
   1164 (7th Cir. 1980), *aff'd*, 455 U.S. 385 (1982).....................................................11

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) ...............................................20

*Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ......................................27

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).....................................22, 23, 28, 34, 35

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ...............26

*Armstrong v. Board of School Directors*, 616 F.2d 305 (7th Cir. 1980), *overruled in part
   by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), *aff'd*, 525 U.S. 315 (1999).............12, 13

*Association for Disabled Americas, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457
   (S.D. Fla. 2002).........................................................................................................29

*Bachman v. Miller*, 559 F. Supp. 150 (D.D.C. 1982) ...................................................39

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969).........................................................40

*Biben v. Card*, No. 84-0844-C 1986 WL 1199 (W.D. Mo. Jan. 6, 1986) ....................25

*Booth v. General Dynamics Corp.*, 264 F. Supp. 465 (N.D. Ill. 1967) ........................40

*Bokusky v. Edina Realty, Inc.*, No. 3-92 Civ. 223, 1993 WL 515827
   (D. Minn. Aug. 6, 1993) ...........................................................................................36

*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D. Ohio 1992) .....................................22, 23

*Bradford v. Union Pac. R.R.*, No. 05-CV-4075, 2007 U.S. Dist. LEXIS 72951
   (W.D. Ark. Sept. 28, 2007).................................................................................26, 29

*Brancheau v. Residential Mortgage Group, Inc.*, 177 F.R.D. 655 (D. Minn. 1997)...............32, 36

*Bronson v. Board of Education of City School District of Cincinnati*,
    604 F. Supp. 68 (S.D. Ohio 1984) .......................................................................21

*Brooks v. Bellsouth Telecommunications, Inc.*, 164 F.R.D. 561 (N.D. Ala. 1995) ......................15

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001) ....................................15

*Bryant v. Bonded Account Service/Check Recovery, Inc.*, 208 F.R.D. 251
    (D. Minn. 2000) .......................................................................................40

*Carpe v. Aquila, Inc.*, 224 F.R.D. 454 (W.D. Mo. 2004) .........................................31, 32

*Carroll v. Sisco*, No. 4:00-CV-00864, 2007 WL 209924 (E.D. Mo. Jan. 23, 2007) ...................23

*Chemi v. Champion Mortgage*, No. 2:05-CV-l238 (WHW), 2009 WL 1470429
    (D.N.J. May 26, 2009) ..............................................................................22

*Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D. Ill. 2008) ......................34

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ...........................................11

*Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) ...................................34

*Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-1236 (RHK/AJB), 2003 WL
    1955169 (D. Minn. Apr. 21, 2003) .................................................................31

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ..............................................11

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) .............................12, 14, 27

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935
    (10th Cir. 2005) .....................................................................................21

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D.Va. 2006) .................................20

*Dirks v. Clayton Brokerage Co. of St. Louis*, 105 F.R.D. 125 (D. Minn. 1985) .................31

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) .....................................27

*Egge v. Healthspan Services Co.*, 208 F.R.D. 265 (D. Minn. 2002) ...........................27, 26

*Eisen v. Carlisle and Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ................................35

*Ellis v. O'Hara*, 105 F.R.D. 556 (E.D. Mo. 1985) ........................................................26

*Engeseth v. County of Isanti*, No. 06-2410, 2007 WL 3102074 (D. Minn. Oct. 23, 2007)..........26

*Esler v. Northrop Corp.*, 86 F.R.D. 20 (W.D. Mo. 1979) ..............................................40

*Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150 (S.D. Iowa 2001) .................31

*Evans v. America Credit System, Inc.*, 222 F.R.D. 388 (D. Neb. 2004) ........................................32

*Fresco v. Auto Data Direct, Inc.*, No. 03-61063-C 2007 WL 2330895
    (S.D. Fla. May 14, 2007) ..............................................................................15

*Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995) .....................................36

*Gates v. Rohm and Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ......................................15

*Gerardo v. Quong Hop and Co.*, No. C 08-3953 JF (PVT), 2009 WL 1974483
    (N.D. Cal. July 7, 2009) ..............................................................................30

*Greer v. Shapiro & Kreisman*, No. 00-0647, 2001 WL 1632135 (E.D. Pa. Dec. 18, 2001) .........23

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ....................................................36

*Gries v. Standard Ready Mix Concrete, L.L.C.*, No. C07-4013-MWB, 2009 WL 427281
    (N.D. Iowa Feb. 20, 2009) ............................................................................40

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................16

*Hage v. General Service Bureau*, No. 8:01CV367, 2002 U.S. Dist. LEXIS 16774
    (D. Neb. Mar. 26, 2002)........................................................................25, 27, 28

*Halbach v. Great-West Life & Annuity Insurance Co.*, No. 4:05CV02399, 2007 WL
    1018658, 2007 U.S. Dist. LEXIS 24252 (E.D. Mo. Apr. 2, 2007)....................................26, 30

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996) .......................................33

*Hallaba v. Worldcom Network Services Inc.*, 196 F.R.D. 630 (N.D. Okla. 2000) ......................26

*Hanson v. Acceleration Life Insurance Co.*, No. A3-97-152, 1999 WL 33283345
    (D.N.D. Mar. 16, 1999) ("Rule 23(a)(2)' ...........................................................26

*Harris v. Reeves*, 761 F. Supp. 382 (E.D. Pa. 1991)...................................................39

*Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398 (D. Minn. 1987) ...................................11

*In re "Agent Orange" Product Liability Litigation*, 818 F.2d 145 (2d Cir. 1987).......................18

*In re Baycol Products Litigation*, 218 F.R.D. 197 (D. Minn. 2003)............................................35

*In re Beef Industrial Antitrust Litigation*, 607 F.2d 167 (5th Cir. 1979) .....................................22

*In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 1996 WL
    167347 (N.D. Ill. Apr. 4, 1996)  ...........................................................................................18

*In re Cendant Corp. Securities Litigation*, 109 F. Supp. 2d 235 (D.N.J. 2000) ...........................14

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) ..................................21

*In re Community Bank of Northern Virginia and Guaranty Bank Second Mortgage
    Litigation*, MDL No. 1674, 2008 WL 239650 (W.D. Pa. Jan. 25, 2008) .........................20, 21

*In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274 (4th Cir. 2007) ..........................................18

*In re Currency Conversion Fee Antitrust Litigation*, No. 01 MDL 1409, M-21-95,
    2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006).........................................................................17

*In re DJ Orthopedics, Inc. Securities Litigation*, No. 01-CV-2238KRBB, 2004 WL
    1445101 (S.D. Cal. June 21, 2004).......................................................................................19

*In re Domestic Air Trans. Antitrust Litigation*, 148 F.R.D. 297 (N.D. Ga. 1993)..................38, 39

*In re Four Seasons Securities Laws Litigation*, 58 F.R.D. 19 (W.D. Okla. 1972) .......................41

*In re Hartford Sales Practices Litigation*, 192 F.R.D. 592 (D. Minn. 1999) ...............................25

*In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, 2009 WL 411877
    (D.N.J. Feb. 17, 2009)..........................................................................................................33

*In re Insurance Management Solutions Group, Inc. Securities Litigation*,
    206 F.R.D. 514 (M.D. Fla. 2002)..........................................................................................29

*In re Integra Realty Resource, Inc.*, 262 F.3d 1089 (10th Cir. 2001).....................................38, 42

*In re Lloyd's Am. Trust Fund Litigation*, No. 92 Civ. 1262 (RWS),
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)....................................................................19

-vi-

*In re Lupron Marketing and Sales Practices Litigation*, 345 F. Supp. 2d 135
(D. Mass. 2004)....................................................................................................................20

*In re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices
Litigation*, 2004 WL 2931352 (D. Minn. Dec. 16, 2004)  ...............................................38, 40

*In re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864
(S.D. Cal. Apr. 13, 2009).........................................................................................................13

*In re McDonnell Douglas Corp. Securities Litigation*, 98 F.R.D. 613 (E.D. Mo. 1982) ........28, 33

*In re Mellon Bank Shareholder Litigation*, 120 F.R.D. 35 (W.D. Pa. 1988)................................36

*In re Mercedes-Benz Antitrust Litigation*, 213 F.R.D. 180 (D.N.J. 2003)....................................33

*In re Motorsports Merchandise Antitrust Litigation*, 112 F. Supp. 2d 1329
(N.D. Ga. 2000) ......................................................................................................................12

*In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996)..........18, 19

*In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977)............................39

*In re OCA, Inc. Securities and Derivative Litigation*, No. 05-2165, 2008 WL 4681369
(E.D. La. Oct. 17, 2008)...........................................................................................................13

*In re Oracle Securities Litigation*, No. C-90-0931-VRW, 1994 WL 502054
(N.D. Cal. June 18, 1994) ........................................................................................................19

*In re PaineWebber Ltd. Partnerships Litigation*, 171 F.R.D. 104 (S.D.N.Y. 1997) ....................42

*In re Potash Antitrust Litigation*, 159 F.R.D. 682 (D. Minn. 1995)........................................32, 33

*In re Prudential Securities Inc. Limited Partnerships Litigation*, 163 F.R.D. 200
(S.D.N.Y. 1995)..................................................................................................................13, 14

*In re RJR Nabisco, Inc. Securities Litigation*, Nos. MDL No. 818 (MBM), 1992 WL
210138, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992)........................................14

*In re Ready-Mixed Concrete Antitrust Litigation*, No. 1:05-cv-00979-SEB-JMS, 2007
WL 3334787 (S.D. Ind. Nov. 8, 2007) ..................................................................................30

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517 (6th Cir. 2008) ..........................................15

*In re Smith*, 926 F.2d 1027 (11th Cir. 1991)..................................................................................12

*In re St. Jude Medical, Inc.*, 425 F.3d 1116 (8th Cir. 2005)........................................................24

*In re Stock Exchanges Options Trading Antitrust Litigation*, No. 99 Civ. 0962 (RCC),
    MDL No. 1283, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ...........................................20, 21

*In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).............................15

*In re Telectronics Pacing System, Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ..........................14

*In re U.S. Oil and Gas Litigation*, 967 F.2d 489 (11th Cir. 1992) .................................................11

*In re Workers' Compensation*, 130 F.R.D. 99 (D. Minn. 1990).....................................................30

*In re Washington Public Power Supply System Securities Litigation*, MDL No. 551,
    1988 WL 158947 (W.D. Wash. July 28, 1988) .......................................................................18

*In re LG/Zenith Rear Projection Television Class Action Litigation*, No. 06-5609 (JLL),
    2009 WL 455513 (D.N.J.  Feb. 18, 2009) ..............................................................................40

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) .........................................................12

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)....................................................................................11

*Jackson v. Rapps*, 132 F.R.D. 226 (W.D. Mo. 1990) ...................................................................32

*Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D. Minn. 2003)........................................................33

*Larson v. Sprint Nextel Corp.*, No. 07-5325, 2009 WL 1228443 (D.N.J. Apr. 30, 2009) ...........42

*Laube v. Campbell*, 333 F. Supp. 2d 1234 (M.D. Ala. 2004) .......................................................12

*Liddell v. Board of Education of City of St. Louis*, No. 4:72-CV-100-SNL, 1999 WL
    33314210 (E.D. Mo. Mar. 12, 1999) ......................................................................................15

*Little Rock School District v. Pulaski County Special School District No. 1*,
    921 F.2d 1371 (8th Cir. 1990) ...........................................................................................10, 12

*Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995)........25, 35, 36

*Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D. Mich. 2000)..............................29

*Lucas v. Kmart Corp.*, 234 F.R.D. 688 (D. Colo. 2006)...............................................................17

*MSK EyEs Ltd. v. Wells Fargo Bank, National Association*, 546 F.3d 533 (8th Cir. 2008) .........10

*MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580 (5th Cir. 1985) .......................................18

*Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61 (S.D. Tex. 1977)................................................38

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)....................................................20

*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424 (E.D. Tex. 2002) .........................................17

*Mehl v. Canadian Pac. Railway Ltd.*, 227 F.R.D. 505 (D.N.D. 2005)..........................................30

*Mehling v. New York Life Insurance Co.*, 246 F.R.D. 467 (E.D. Pa. 2007) ..................................14

*Moffitt v. Johnson*, No. 4:05CV00963 2007 WL (E.D. Ark. Oct. 2, 2002)....................................40

*Monaco v. Carpinello*, No.  2007 WL 1174900 (E.D.N.Y. Apr. 19, 2007) ..................................40

*Monsanto Co. v. Baumgardner*, No. 4:04-CV-00708-ERW (E.D. Mo. Mar. 29, 2005) ................3

*Morgan v. UPS*, 169 F.R.D. 349 (E.D. Mo. 1996) ..........................................................24, 25, 30

*Morisky v. Public Service Electric and Gas Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000) ..................15

*Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325 (1st Cir. 1991) ...........................................38

*Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358 (E.D. Ark. 2007)..............................................35

*Newton v. Kroger Co.*, 83 F.R.D. 449 (E.D. Ark. 1979) ...............................................................30

*Owner Operator Independent Drivers Association v. New Prime, Inc.*,
213 F.R.D. 537 (W.D. Mo. 2002), *aff'd*, 339 F.3d 1001 (8th Cir. 2003) ...............................28

*Paper System Inc. v. Nippon Paper Industrial Co.*, 281 F.3d 629 (7th Cir. 2002)......................18

*Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982) ................................523, 26, 27, 28

*Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21 (D. Mass. 2003)......................................32

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .....................................................12, 30

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................35

*Pigford v. Veneman*, 355 F. Supp. 2d 148 (D.D.C. 2005) ............................................................39

*Reynolds v. NFL*, 584 F.2d 280 (8th Cir. 1978)............................................................30

*Rozema v. Marshfield Clinic*, 174 F.R.D. 425 (W.D. Wis. 1997) ...............................33

*Sample v. Monsanto Co.*, 218 F.R.D. 644 (E.D. Mo. 2003), *aff'd sub nom. Blades v. Monsanto*, 400 F.3d 562 (8th Cir. 2005) .............................................................5, 23

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001) .............13

*Schoenbaum v. E.I. DuPont de Nemours and Co.*, 517 F. Supp. 2d 1125 (E.D. Mo. 2007) .......2, 4

*Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007) ............................................................................4

*Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2008 WL 4790332 (E.D. Mo. Oct. 28, 2008) ...........................................................................5

*Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2009 WL 249099 (E.D. Mo. Feb. 2, 2009) .............................................................................5

*Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2009 WL 1045469 (E.D. Mo. Apr. 20, 2009).........................................................................2

*Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2009 WL 1451700 (E.D. Mo. May 20, 2009)......................................................................6,

*Scott v. First America Title Insurance Co.*, No. 06-CV-286-JD, 2008 WL 2563460 (D.N.H. June 24, 2008) ...................................................................................13

*Sebo v. Rubenstein*, 188 F.R.D. 310 (N.D. Ill. 1999) ...................................................29

*Siegel v. Shell Oil Co.*, 256 F.R.D. 580 (N.D. Ill. 2008) ..............................................33

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) ...............................................................41

*Sonmore v. CheckRite Recovery Services, Inc.*, 206 F.R.D. 257 (D. Minn. 2001).................24, 27

*Stewart v. CenterPoint Energy Resource Corp.*, No. 05-CV-1502RHKAJB, 2006 WL 839509 (D. Minn. Mar. 28, 2006) ......................................................................30

*Thomas v. NCO Finance System*, No. 00-5118, 2002 WL 1773035, 2002 U.S. Dist. LEXIS 14157 (E.D. Pa. July 31, 2002).......................................................13

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ................................................................14, 33

*Thompson v. Edward D. Jones & Co.*, 992 F.2d 187 (8th Cir. 1993)............................10

*United States v. Bliss*, 133 F.R.D. 559 (E.D. Mo. 1990) ............................................10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ..................................11

*Wakefield v. Monsanto Co.*, 120 F.R.D. 112 (E.D. Mo. 1988)........................24, 28, 30

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................27

*Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404 (N.D. Miss. 2000).........37

*Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ...........31

*Weil v. Long Island Savings Bank, FSB*, 200 F.R.D. 164 (E.D.N.Y. 2001) ................33

*White v. NFL*, 822 F. Supp. 1389 (D. Minn. 1993) .....................................................22

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014 (9th
    Cir. 1981) ..............................................................................................................18

*Williams v. First National Bank of Pauls Valley*, 216 U.S. 582 (1910) .......................10

*Williams v. Mohawk Industrial, Inc.*, 568 F.3d 1350 (11th Cir. 2009)........................34

*Woodward v. NOR-AM Chem. Co.*, No. 94-0780-C 1996 WL 1063670 (S.D. Ala. May
    23, 1996) ................................................................................................................21

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. Unit A 1981) .............24


**DOCKETED CASES**

*Larsen v. Pioneer Hi-Bred International, Inc.*, No. 4:06-CV-77 (S.D. Iowa) ..............17

*Layman v. Pioneer Hi-Bred International, Inc.*, No. 2004-0399-II
    (Tenn. Cir. Ct. Sevier Cty.) ....................................................................................17

## RULES

Fed. R. Civ. P. 23(a) ...................................................................5, 23, 24, 25, 26, 28

Fed. R. Civ. P. 23(b)(3)............................................................................24, 34

Fed. R. Civ. P. 23(b)(3)(A)-(D) .........................................................................34

Fed. R. Civ. P. 23(c)(2) ...................................................................................37

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................37

Fed. R. Civ. P. 23(e)(1) ...................................................................................37

Fed. R. Civ. P. 23(e)(1)(C) ...............................................................................43

Fed. R. Civ. P. 23(g)(1) ...................................................................................30

Fed. R. Civ. P. 23(g)(3) .....................................................................................4

## OTHER AUTHORITIES

*Manual for Complex Litigation, Second* § 30.44 (1985) ............................................15

# I.  PRELIMINARY STATEMENT

Plaintiffs[1] respectfully submit this memorandum of law in support of their motion, pursuant to Rule 23(a), (b)(3), (c)(2)(B), and (e)(1) of the Federal Rules of Civil Procedure, for (i) preliminary approval of the settlement reached on July 14, 2009 with Defendants E.I. DuPont de Nemours and Company ("DuPont") and Pioneer Hi-Bred International, Inc. ("Pioneer")[2]; (ii) for the purposes of sending notice of the settlement, conditional certification of twenty-six settlement classes ("Settlement Classes" or "Classes")) – composed of purchasers, in each of the thirteen states in which these consolidated actions were originally filed,[3] of, respectively, soybean and corn seeds incorporating genetically-modified seed technologies licensed by Defendant Monsanto Company ("Monsanto"); and (iii) approval of notice to be disseminated to the Settlement Classes.

Plaintiffs and Pioneer have reached a settlement that provides for Pioneer's payment of $2 million to the Settlement Classes in exchange for the release of the class-wide claims asserted against Pioneer.  The settlement satisfies the very low threshold for preliminary approval of being possibly fair, reasonable, and adequate.  Although Plaintiffs believe the settlement to be

---

[1] "Plaintiffs" collectively refers to the twenty-eight individuals and entities named as plaintiffs in the Second Amended Consolidated Master Consolidated Class Action Complaint ("Complaint" or "Second Amended Complaint"), which was filed under seal on May 29, 2009 (D.I. 368).  For ease of reference and convenience, "Plaintiffs" is also used to collectively refer to the named plaintiffs who initially filed the constituent actions in this consolidated litigation and prosecuted the claims prior to the filing of the Second Amended Complaint.  Several of those plaintiffs have since withdrawn from the litigation, with some of them having been replaced by the farming business they control or by the owner of the entity previously named a plaintiff.

[2] For convenience and ease of reference, unless otherwise indicated, DuPont and Pioneer are collectively referred to herein as Pioneer.

[3] As the Court is aware, those states are Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, and Wisconsin.

fair, reasonable, and adequate, that issue will be addressed in the papers submitted for final approval, should the Court grant the instant application for preliminary approval.  In addition, for the purpose of sending notice to their members, the proposed Settlement Classes satisfy the criteria for provisional class certification under Rule 23 of the Federal Rules of Civil Procedure; and the proposed notice to prospective class members comports with due process and Rule 23, both as to its content and as to the publication notice campaign that Plaintiffs propose for its dissemination in light of the considerable size of the Classes and the lack of any practicable means to identify and deliver individual notice to all of their members without expending time and resources grossly disproportionate to the amount of the proposed partial settlement.

Accordingly, the Court should preliminarily approve the settlement with Pioneer, conditionally certify the proposed statewide Settlement Classes, appoint Plaintiffs as representatives of their respective Settlement Class(es), and approve the proposed form and content of notice of the settlement to be disseminated to prospective class members.

## II. <u>STATEMENT OF FACTS</u>

### A. <u>Background of the Litigation</u>

The Court is well acquainted with the lengthy history of this litigation and the nature of Plaintiffs' claims, which it has set forth in its September 2007 decision (D.I. 190) on Defendants' motion to dismiss the June 2006 Master Consolidated Amended Class Action Complaint ("Master Complaint") and its April 2009 decision (D.I. 360) on Plaintiffs' motion for leave to file the Second Amended Complaint.  *See Schoenbaum v. E.I. DuPont de Nemours and Co.*, 517 F. Supp. 2d 1125, 1129-33 (E.D. Mo. 2007); *Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2009 WL 1045469, at **1-2 (E.D. Mo. Apr. 20, 2009).

-2-

Briefly summarized, Plaintiffs commenced the constituent actions in March 2004, in the state courts of the thirteen states where the named plaintiffs reside, *see supra* at 1 n.3, alleging that Defendants have been, among other things, conspiring to charge supracompetitive prices for Roundup Ready® brand soybean and corn seeds, which contain Monsanto's licensed, genetically-modified seed technologies that render crops grown from those seeds resistant to certain herbicides, and YieldGard® brand corn seed, which contains Monsanto's licensed, genetically-modified seed technology that renders crops grown from those seeds resistant to certain corn pests.  Plaintiffs asserted state law antitrust claims, as well as unfair trade practices and common law unjust enrichment claims.

In June 2004, approximately three months after Plaintiffs filed their initial actions, Monsanto sued Plaintiffs in this Court, alleging that Plaintiffs' filing of the state court actions violated the forum selection clause in the Monsanto Technology Agreements that each Plaintiff had signed directly with Monsanto.  Monsanto contended that Plaintiffs' alleged forum selection clause breaches were actually breaches of the entire Monsanto Technology Agreement, thereby enabling Monsanto to unilaterally terminate those license agreements and thus, in Monsanto's view, enabling it to sue each of those Plaintiffs, who had planted genetically-modified crops pursuant to those agreements, for purported "patent infringement." Plaintiffs and Monsanto cross-moved for summary judgment[4] and, by decision issued in March 2005, this Court rejected Monsanto's patent infringement theory and dismissed the retaliatory action.   *Monsanto Co. v. Baumgardner*, No. 4:04-CV-00708-ERW (E.D. Mo. Mar. 29, 2005).

---

[4] Pioneer successfully moved to intervene in that action and filed a brief in opposition to the defendants' (*i.e.*, Plaintiffs') cross-motion for summary judgment, joining Monsanto's breach of contract claims against Plaintiffs.

Thereafter, the parties agreed to the transfer and consolidation of these cases in this Court, which entailed a nearly six-month-long process to effectuate, including, for those actions not already removed to federal court, the amendment of state court complaints to add federal antitrust claims; the removal of those actions to federal court; the filing of venue transfer motions; and the physical transfer of files by court personnel.  By Orders entered on December 20, 2005 (D.I. 102) and January 4, 2006 (D.I.113), respectively, the Court granted the parties' joint request for consolidation of the actions (D.I. 92, 100-01) and Plaintiffs' motion for appointment of their counsel as Interim Class Counsel under Fed. R. Civ. P. 23(g)(3) (D.I. 94-95).

Defendants then moved to dismiss Plaintiffs' complaints (D.I 115-16), in response to which Plaintiffs moved for leave to file a consolidated amended complaint (D.I. 124-26).  On June 6, 2006, the Court rejected Plaintiffs' proposed pleading based on its length, but granted Plaintiffs leave to file an amended complaint (D.I. 134), which they did on June 20, 2006 (D.I. 136) (the "Master Complaint").

In August 2006, Defendants moved to dismiss the Master Complaint (D.I. 138, 140). That motion resulted in extensive briefing, including supplemental briefs that were filed after the full-day hearing on the motion, held in January 2007 (D.I. 153, 157-58).  On September 20, 2007, the Court sustained most of the counts in the Master Complaint but dismissed certain counts, such as Plaintiffs' civil RICO claims (D.I. 190-91; *see also* D.I. 210-11).  *Schoenbaum*, 517 F. Supp. 2d at 1136-56; *see also Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007) (ruling on parties' cross-motions for clarification of Sept. 20, 2007 decision).

-4-

Following the Court's adjudication of Defendants' motion to dismiss the Master Complaint, the parties engaged in extended negotiations to formulate a Joint Scheduling Plan (D.I. 232), which the Court incorporated into the initial Case Management Order ("CMO") that it entered on May 27, 2008, following a May 23, 2008 Rule 16 conference, and which provided for bifurcated discovery, with the first phase of discovery to be limited to class certification-related issues (D.I. 233). Following the entry of the CMO and a related discovery production protocol (D.I. 237-2) and confidentiality order (D.I. 236) that the parties had also negotiated, class certification-related discovery commenced in the summer of 2008. That discovery spawned a number of disputes between the parties, most of which were resolved through the meet-and-confer process but several of which resulted in motion practice.[5]

Meanwhile, in February 2009, Plaintiffs moved for leave to file a second amended master complaint, for the purpose of correcting or updating allegations respecting certain Plaintiffs; formally joining legal entities through which certain Plaintiffs conducted their farming operations during all or part of the relevant period at issue in the litigation (or joining an individual plaintiff who owned an existing corporate Plaintiff); refining the scope of Plaintiffs' proposed classes and claims for relief (including a narrowing of the temporal scope of Plaintiffs'

---

[5] *E.g.*, *Schoenbaum*, 2009 WL 1045469, at **2, 6 (D.I. 360) (rulings on Monsanto's motion for protective order relating to Plaintiffs' requests for admissions and Defendants' motion to compel Plaintiffs' responses to Defendants' joint third set of interrogatories); *Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2009 WL 249099 (E.D. Mo. Feb. 2, 2009) (D.I. 315) (rulings on Defendants' motion to compel production of Plaintiffs' income tax filings, and Plaintiffs' motion to compel Defendants' responses to sundry interrogatories and requests for production of documents); *Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2008 WL 4790332 (E.D. Mo. Oct. 28, 2008) (D.I. 272) (rulings on Plaintiffs' motions for protective order pertaining to Pioneer's issuance of state court subpoena to withdrawing Tennessee Plaintiff Tim Curry and Pioneer's requests for admission directed to all Plaintiffs).

damages claims); and adding claims under the Sherman Act and the Patent Act against Monsanto, asserting misuse of its patents (D.I 324-26).  The Court held hearings on that motion and several discovery motions on April 6 and 13, 2009 (D.I.  358-59, 372-73).  By decision dated April 20, 2009 (D.I. 360), the Court granted Plaintiffs' Rule 15(a) motion in part and denied it in part.  *Schoenbaum*, 2009 WL 1045469, at **3-6 (D.I. 360).

Following the Court's ruling on the Rule 15(a) motion, the parties had discussions concerning the scope of the Court's April 20th ruling and, in connection with those discussions, Plaintiffs provided a draft of their proposed second amended complaint to Defendants for their review, so as to either eliminate or at least minimize disputes about the extent to which that pleading comported with the Court's Rule 15(a) decision.  Meanwhile, Plaintiffs moved for clarification of that ruling (D.I. 362-63).  On May 20, 2009, the Court granted that motion in part and denied it in part (D.I. 366).  *Schoenbaum v. E.I. DuPont de Nemours and Co.*, No. 4:05-CV-1108-ERW, 2009 WL 1451700, at **1-2 (E.D. Mo. May 20, 2009).  Having obtained the Court's clarification, on May 29, 2009, Plaintiffs filed their Second Amended Complaint (D.I. 368-71).

## B.  **The Settlement with Pioneer**

Although the parties continued to move apace to complete the remaining class certification-related discovery and to negotiate a timetable for the filing and briefing of Defendants' motions to dismiss the Second Amended Complaint (*see*, *e.g*., D.I. 375), Plaintiffs and Pioneer, in the meantime, had engaged in ongoing, albeit sporadic, settlement discussions. The settlement discussions consisted of numerous telephone conferences, an in-person meeting, e-mails, and eventually the exchange of proposals.  The settlement negotiations were, at all times, vigorous and at arm's length.

Through their extensive and spirited efforts, Plaintiffs and Pioneer have now reached a settlement that fairly, adequately, and reasonably balances the various competing considerations. These include a careful balancing of the merits of the parties' respective claims and defenses; the objective of providing relief to the members of the Classes of farmers on whose behalf Plaintiffs commenced these actions and allowing Plaintiffs to focus their efforts and resources in this litigation on Monsanto – the principal culpable party defendant – while achieving, for Pioneer, closure at a bearable cost; and the goal of avoiding further costly, burdensome, and time-consuming litigation for both sides.

### 3.    **The Terms**

The Settlement Agreement with Defendants E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International, Inc., dated July 14, 2009 ("Settlement," "Settlement Agreement," or "Agreement"), provides for Pioneer's payment of $2 million to the Settlement Classes, in exchange for Plaintiffs' class-wide release of Pioneer from all claims asserted in this litigation, as well as all potentially similar claims.  Agreement ¶¶ 1(cc), 9-10 (copy annexed as Ex. 1). Pioneer is to pay the settlement consideration to Class Counsel as Settlement Trustees within ten business days of the Agreement's execution or forty-eight hours after the filing of the instant motion, whichever is later.  *Id.* ¶ 13.  The Settlement Fund, which is to be invested in U.S. Treasury Securities, federally-insured bank accounts or certificates of deposit, or similar protected investments (the return on which will be added to the settlement corpus), will be subject to the Court's jurisdiction.  *Id.* ¶ 16.

Under the terms of the Settlement, Class Counsel may withdraw up to $175,000 prior to the Court's final approval of the Settlement to cover the costs of notice to prospective class

members and for settlement administration. *Id.* ¶¶ 1(j), 15.  Amounts advanced for those

purposes will not be subject to refund to Pioneer in the event that the Settlement fails to receive

final approval. *Id.* ¶ 15.  The costs of class notice, settlement administration, any Court-

approved incentive awards for the named Plaintiffs, and reimbursement of $200,000 of Class

Counsel's costs in this litigation to date will come out of the Settlement Fund. *Id.* ¶¶ 1(j), 15, 18.

Although the Settlement provides for partial reimbursement of Class Counsel's litigation costs,

Class Counsel will not seek attorney's fees unless the $2 million settlement consideration is

augmented by a further recovery from Monsanto.  *Id.* ¶ 18.  Pioneer agrees not to object to any

application for attorney's fees or costs or for incentive awards to Plaintiffs, although it will not

volunteer a position on such application.  *Id.* ¶¶ 19-20.  The net settlement proceeds will

eventually be distributed by a professional claims administrator to be selected by Class Counsel.

*Id.* ¶ 1(c).  The Agreement, however, defers a plan of allocation to class members until ninety

days after the final resolution of Plaintiffs' claims against Monsanto.  *Id.* ¶ 17.

### 4.   <u>The Settlement Classes</u>

The Agreement provides for the certification of the twenty-six statewide Settlement

Classes – a Roundup Ready$^{®}$ Soybean Seed Purchaser Class and a Genetically-Modified Corn

Seed Purchaser Class for each of the thirteen affected States.  Agreement ¶ 1(f),  Specifically,

each class consists of all persons and entities within each such statewide class who, at any point

from January 1, 1996 through July 14, 2009, are or were signatories or otherwise subject to

Monsanto Technology Agreements or Pioneer Technology Agreements and who, (a) from the

1998 through the 2001 crop years (both inclusive), paid Monsanto a separately-charged

Technology Fee, through Monsanto's seed manufacturer licensees (or those licensees' agents or

-8-

authorized dealers), and who accordingly pursue damages and declaratory and/or injunctive relief; or (b) from the 2002 crop year (inclusive) to the present purchased the seed product at issue for their respective class (*i.e.*, Roundup Ready® soybean seeds, Roundup Ready® corn seeds, or YieldGard® corn seeds) from Monsanto or any of its subsidiaries (or through one or more of Monsanto's other seed manufacturer licensees or their agents or authorized dealers without paying a separately-charged Technology Fee), and who pursue only declaratory and/or injunctive relief, except for those in the Kansas and Wisconsin classes, who also claim damages for this latter time period. *Id.*

The Agreement provides for notice of the settlement to be disseminated to prospective class members by publication. Agreement ¶ 6 & Ex. C. Specifically, it prescribes a robust campaign of electronic banner advertisements for a sixty-day period via the Data Transmission Network ("DTN"), an electronic network to which many farmers subscribe; advertisements in DTN's *Snapshot* e-newsletter, and concurrent half-page print advertisements in the Midwestern Edition of DTN's *Progressive Farmer* magazine and in *Farm Journal* and *Successful Farming* magazines, publications that are widely read by prospective class members. *Id.* ¶ 6.

Finally, the Agreement provides that if prospective class members opting out of the Agreement farmed an aggregate threshold number of acres during the 2009 crop year – as specified in a side agreement – then Pioneer may rescind the Agreement. Agreement ¶ 26. For those putative opt-outs who fail to furnish their farm acreage, Plaintiffs and Pioneer have agreed to use average farm acreage contained in the U.S. Department of Agriculture's most recent Census of Agriculture. *Id.*

## III.  ARGUMENT

**THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT,
CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES, APPOINT
PLAINTIFFS AS CLASS REPRESENTATIVES, APPROVE THE PROPOSED
NOTICE TO CLASS MEMBERS, AND SCHEDULE A FAIRNESS HEARING**

A.     **The Court Should Preliminarily Approve the Settlement**

2.     **Applicable Standards Pertaining
to Preliminary Approval of Settlements**

It is long settled that "compromises of disputed claims are favored by the courts."

*Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910); *accord MSK EyEs Ltd. v.*

*Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 541 (8th Cir.  2008) (noting "our strong public

policy of encouraging settlement") (citation and internal quotation marks omitted); *Thompson v.*

*Edward D. Jones & Co.*, 992 F.2d 187, 191 (8th Cir. 1993) (noting "the paramount policy of

encouraging settlements") (citation and internal quotation marks omitted); *Little Rock Sch. Dist.*

*v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law

strongly favors settlements.  Courts should hospitably receive them.  This may be especially true

in . . . protracted, highly divisive, even bitter litigation[.]"); *United States v. Bliss*, 133 F.R.D.

559, 567 (E.D. Mo. 1990) ("The courts have long recognized that public policy favors

settlements as a cost-efficient and convenient means of resolving disputes and conserving

judicial resources."); *Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1405 (D. Minn.

1987) ("Federal courts look with favor on the voluntary resolution of litigation through

settlement.").

This policy is particularly strong where complex class action litigation is concerned, as

this Court and many others have noted.  *E.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D.

-10-

Mo. 2005) ("'The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'") (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (in turn citing authorities)); *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *In re Domestic Air Trans. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) ("[S]ettlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.") (citation and internal quotation marks omitted); *accord Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); *Airline Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1166-67 (7th Cir. 1980) ("Federal Courts look with great favor upon the voluntary resolution of litigation through settlement.   This rule has particular force regarding class action lawsuits") (citations omitted), *aff'd,* 455 U.S. 385 (1982); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement"); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation," and "[t]his is particularly true in class action suits . . . which frequently present serious problems of management and expense") (footnote omitted); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1238 (M.D. Ala. 2004) ("Judicial policy favors voluntary settlement of class-action cases").

The rationale for this policy is simple.  "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the

strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd*, 525 U.S. 315 (1999); *accord In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991) (class action settlements are favored because they "conserve[] scarce judicial resources"); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The very purpose of compromise is to avoid the delay and expense of . . . a trial. . . . The parties to a class action are not required to incur immense expense before settling as a means to justify that settlement.") (citation and internal quotation marks omitted); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (class action settlements "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process"); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 688 (N.D. Ga. 2001) (class action settlements "conserve scarce resources that would otherwise be devoted to protracted litigation").

It is because of the strong public policy favoring agreements that "'courts should approach them with a presumption in their favor.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *Little Rock Sch. Dist.*, 921 F.2d at 1388). Specifically, on a motion for preliminary approval of a class-wide settlement, a court's review is limited. A court determines only whether the settlement is "*possibly* fair, reasonable and adequate," and "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208-09 (S.D.N.Y. 1995) (emphasis added); *accord Armstrong*, 616 F.2d at 314 (preliminary approval inquiry is only "to determine whether the proposed settlement "is within the range of *possible*

approval") (citation and internal quotation marks omitted; emphasis added); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original); *Scott v. First Am. Title Ins. Co.*, No. 06-CV-286-JD, 2008 WL 2563460, at *2 (D.N.H. June 24, 2008) ("For purposes of preliminary approval, the court must determine whether the proposed settlement appears to meet that standard and, therefore, whether the settlement is within the range of *possible* approval.") (emphasis added).[6]

The Court's main concern on the instant motion for preliminary approval is whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001) (citation and internal quotation marks omitted); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (same; citation and internal quotation marks omitted).[7]   In

---

[6] *See also In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) ("Because class members will subsequently receive notice and have an opportunity to be heard on the settlement," court "need not review the settlement in detail" at preliminary approval stage; "instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval") (citation and internal quotation marks omitted).

[7] *Accord Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001) ("The district court bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement"); *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (common

-13-

conducting that inquiry, the Court lacks "the right or the duty to reach any ultimate conclusions

on the issues of fact and law which underlie the merits of the dispute." *Grunin*, 513 F.2d at 123

("In examining a proposed compromise for approval or disapproval . . . the court does not try the

case. The very purpose of compromise is to avoid the delay and expense of such a trial.")

(citation and internal quotation marks omitted); *accord Mehling*, 246 F.R.D. at 472 (citing

cases).

Additionally, in considering a settlement, a court is required to take the parties' views

into account. *DeBoer*, 64 F.3d at 1178 ("The views of the parties to the settlement must also be

considered."); *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000)

("Significant weight should be attributed to the belief of experienced counsel that settlement is in

the best interest of the class.") (citation and internal quotation marks omitted); *In re RJR*

*Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 WL 210138,

at *4, 1992 U.S. Dist. LEXIS 12702 at *12 (S.D.N.Y. Aug. 24, 1992) (court "should give

deference, when considering the fairness of the proposed settlement, to the judgment of

---

inquiry is whether proposed settlement is product of "arms-length negotiations"); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."); *In re OCA, Inc. Secs. and Derivative Litig.*, No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) (same; citing cases); *Scott*, 2008 WL 2563460, at *2 ("In making a preliminary determination, the court considers whether the settlement is collusive between the parties or, instead, was reached through arms length negotiation.") (citing cases); *Thomas v. NCO Fin. Sys.*, No. 00-5118, 2002 WL 1773035, at *5, 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002) (court considers whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval") (citing *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)).

experienced class counsel"). A corollary to this deferential level of scrutiny is the rule that "an individual who objects has a heavy burden of proving the settlement is unreasonable." *Brotherton*, 141 F. Supp. 2d at 904 (citing cases).

"Because at this point the court usually has only minimal evidence before it," the preliminary approval determination "'is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.'" *Morisky v. Public Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (quoting *Brooks v. Bellsouth Telecomms., Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995)). Assuming that the lenient standard for preliminary approval is satisfied, "'then the court should direct that the notice be given to the class members of a formal fairness hearing.'" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation, Second* § 30.44 (1985)); *accord Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("A proposed settlement should be preliminarily approved if it 'is within the range of possible approval' or . . . [if] there is 'probable cause' to notify the class of the proposed settlement.") (quoting *Horton v. Merrill Lynch*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)).[8]

## 2. <u>The Court Should Preliminarily Approve the Settlement</u>

Measured against this generous standard, the instant Settlement deserves preliminary approval so that notice can be addressed to members of the Classes, that they may be afforded

---

[8] *See also Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008) ("the standard for preliminary approval is far less demanding"); *cf. Liddell v. Board of Educ. of City of St. Louis*, No. 4:72-CV-100-SNL, 1999 WL 33314210, at *4 (E.D. Mo. Mar. 12, 1999) (standard for final approval is that "[a] District Court may only approve a class action settlement that is 'fair, reasonable, and adequate'") (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

-15-

the opportunity to have their views considered on the issue of approval.

There were any number of general considerations that went into the Settlement negotiated between Plaintiffs and Pioneer.  As a general matter, these included such things as avoiding or reducing the further cost of litigation and eliminating the uncertainty of further litigation (including possible appeals).  From Plaintiffs' perspective, specific considerations included their assessment of the degree of Defendants' relative culpability in the conduct complained of (gained from what has been learned in the bifurcated discovery process); developments in this litigation to date; precedents from this District and Circuit (including the *Sample/Blades/McIntosh* litigation[9]); and the fact that the settlement allows Plaintiffs to provide monetary relief to class members at the conclusion of the litigation (from defendants whom Plaintiffs consider to be "secondary players" in the price-fixing and monopolization scheme) while, for the time being, permitting a present partial recoupment of Plaintiffs' litigation costs, so that they can focus their efforts on pursuing their claims against the principal wrongdoer, Monsanto.  From Pioneer's perspective, the settlement allows it to achieve complete closure without any concession of liability and to avoid further transaction costs beyond the substantial transaction costs that it has incurred thus far in defending against spirited adversaries.

One of the most persuasive hallmarks of a settlement that was fairly and honestly negotiated is that it has come after "the parties to th[e] litigation have vigorously advocated their respective positions throughout the pendency of the case."  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citation and internal quotation marks omitted) (case had been

---

[9] *Sample v. Monsanto Co.*, 218 F.R.D. 644 (E.D. Mo. 2003), *aff'd sub nom. Blades v. Monsanto*, 400 F.3d 562 (8th Cir. 2005).

"litigated over the course of six years, during which time both parties engaged in extensive written and deposition discovery, [and] filed a number of contested discovery motions"); *see*, *e.g.*, *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002) ("The Court is in agreement that the settlement reached was one resulting from strenuous long-term negotiations . . . . [T]his case has been on file for over five years, and each party has pursued its case with vigor and determination.").

The Court is well aware that such is clearly the case here.  Plaintiffs and Pioneer have vigorously and capably advocated their positions on the various, extensively-briefed motions in this litigation to date, including the motion to dismiss the Master Complaint, the sundry discovery motions, motions to intervene in or to enjoin analogous actions in other courts (*Larsen v. Pioneer Hi-Bred Int'l, Inc.*, No. 4:06-CV-77 (S.D. Iowa), and *Layman v. Pioneer Hi-Bred Int'l, Inc.*, No. 2004-0399-II (Tenn. Cir. Ct. Sevier Cty.), and the recent motion for leave to file the Second Amended Complaint.  Thus, this is plainly not a case where adversaries have colluded or where Plaintiffs can be accused of having half-heartedly fulfilled their obligations to absent class members.

Nor is the size of the recovery suggestive of inadequate consideration for the Settlement Classes.  As courts have recognized, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *In re Currency Conversion Fee Antitrust Litig.*, Nos. 01 MDL 1409, M-21-95, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (citation and internal quotation marks

omitted).[10]

Finally, the Settlement's deferral of a plan of allocation makes sense given both size of the Settlement Fund presently created and the need for resolution of Plaintiffs' claims against Monsanto.  As a general matter, there is no absolute requirement that a settlement contain a plan of allocation in order to receive approval.  *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987).  As a specific matter, "'[d]eferral of allocation decisions is routinely followed in partial settlements where the appropriate allocation among class members can best be determined when further settlements have been achieved or the litigation is completely resolved.'"  *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 167347, at *5 (N.D. Ill. Apr. 4, 1996) (quoting *In re Washington Pub. Power Supply Sys. Secs. Litig.*, MDL No. 551, 1988 WL 158947, at*4 (W.D. Wash. July 28, 1988) (in turn citing cases)).

In this respect, any matrix for awarding settlement benefits is likely to be different if the Settlement Fund is increased through an additional recovery from Monsanto.  The larger a settlement fund, the greater the ability of attorneys for a class to devise (as well as the

---

[10] The settlement with Pioneer does not absolve Monsanto from responsibility for Pioneer's role in the conspiracy (or the role of any other conspirator that is not a named defendant) because antitrust conspirators are jointly and severally liable for all damages arising from their conspiracy.  Thus, Plaintiffs are entitled to pursue Monsanto for the entirety of their damages (less, of course, the settlement consideration paid by Pioneer).  *E.g.*, *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 284 (4th Cir. 2007) ("[C]o-conspirators are not necessary parties; a plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy."); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 634 (7th Cir. 2002) ("If Nippon Paper participated in a cartel of thermal fax paper . . . then it is jointly and severally liable for the cartel's entire overcharge."); *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 584-85 & n.9 (5th Cir. 1985) (rule of joint and several liability "applies to antitrust liability") (citing cases); *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1053 (9th Cir. 1981) ("[Plaintiff] was not required to sue all of the alleged conspirators inasmuch as antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy.") (citing cases); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 508 (S.D.N.Y. 1996) ("[A]ntitrust liability is joint and several[.]").

justification for devising) an allocation formula that distributes proceeds to class members under a more elaborate and weighted formula.  For example, a more elaborate allocation matrix would give appropriate weight to the timing, type, and amount of seed purchases, as well as any countervailing factors.[11]  Correspondingly, requiring a plan of allocation in order for this partial settlement to receive approval could "complicate settlement negotiations," *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 480 (citation and internal quotation marks omitted), that might open between Plaintiffs and Monsanto by forcing Plaintiffs to reveal (and justify) the specific strengths and weaknesses they perceive in the various claims, defenses, and fact patterns in this litigation.

In addition, requiring a plan of allocation now would unnecessarily squander resources and deplete the fund for a potentially unnecessary additional round of claims adjudication and settlement benefits distribution.  *Cf.  DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 83 (E.D.Va. 2006) ("[D]eferring a possibly unnecessary determination of the procedures for allocation of a Plan recovery among class members will conserve judicial resources.").

---

[11] *See In re Lloyd's Am. Trust Fund Litig.*, No. 92 Civ. 1262 (RWS),  2002 WL 31663577, 19 (S.D.N.Y. Nov. 26, 2002) ("The parties' negotiated plan of allocation recognizes that Class Members had differing maximum limits on the amounts of insurance that could be underwritten on their account, and also that Class Members underwrote with Lloyd's for differing lengths of time.  Class Members who underwrote larger amounts of insurance over a greater number of years clearly are more likely to have had greater dollar amounts of premiums deposited in, and claims paid from, the [trust funds at issue]; if liability and damages were established, such Class Members would be expected to have suffered greater losses in proportion to their greater financial exposure.  The detailed overall premium limit calculations . . . appropriately recognize these differences in allocating settlement benefits."); *In re Oracle Secs. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.  It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits.") (citations omitted); *cf. In re DJ Orthopedics, Inc. Secs. Litig.*, No. 01-CV-2238KRBB, 2004 WL 1445101, at *6 (S.D. Cal. June 21, 2004) (allocation in securities class action settlement, varying recovery based on dates of purchase and retention of shares at issue).

**B.  The Court Should Conditionally Certify the Settlement Classes and**
   **Appoint Plaintiffs as Representatives of Their Respective Class(es)**

   **1.  The Proposed Settlement Classes**

   The purpose of conditional class certification is to allow notice of the proposed

Settlement to be directed to members of the conditional approval classes.  *See In re Lupron*

*Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 (D. Mass. 2004) ("no practical way"

for court to ascertain fairness of proposed class settlement "other than by proceeding with

conditional class certification and giving notice with the opportunity for its members to opt in or

out of the settlement"); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658-59 (E.D. Cal. 2008)

("Procedurally, the approval of a class action settlement takes place in two stages.  In the first

stage of the approval process, the court preliminarily approve[s] the Settlement pending a

fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the

Class.") (citing cases; internal quotation marks omitted).[12]  The notice, in turn, is necessary so

---

[12] *See also McBean v. City of New York*, 228 F.R.D. 487, 500 (S.D.N.Y. 2005) ("[A]pproval of a
class settlement is generally a multi-step procedure, whereby a preliminary assessment of the
settlement's fairness (and, if formal class certification has not yet occurred, approval of the
settlement class) is made, following which the court directs notice to class members, and sets a
date for a final fairness hearing on the proposed settlement."); *In re Community Bank of N. Va.
and Guar. Bank Second Mortg. Litig.*, MDL No. 1674, 2008 WL 239650, at *8 (W.D. Pa. Jan.
25, 2008) ("[N]o class has been properly certified in this case.  Therefore, [w]ithout certification
there is no class action, and in a settlement entered without class certification the judgment will
not have res judicata effect on the absent class members.  Further, [i]n the class action context,
the district court obtains personal jurisdiction over the absentee class members by providing
proper notice of the impending class action and providing the absentees with the opportunity to
be heard or the opportunity to exclude themselves from the class.  The due process requirements
of the Fifth Amendment . . . are satisfied by the combination of reasonable notice, the
opportunity to be heard and the opportunity to withdraw from the class.") (citations and internal
quotation marks omitted); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ.
0962 (RCC), MDL No. 1283, 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005) ("In the context
of settlement, courts often provisionally certify the class along with preliminary approval of the
settlement.  The second step is to give notice to class members and to hold a hearing to

that due process and Rule 23 requirements of notice and the right to be heard in court are achieved before a settlement is considered for final approval.[13]

Importantly, because the certification is conditional, "the court preserves the defendant's ability to contest certification should the settlement fall apart."  *In re Community Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) (citation and internal quotation marks omitted).

Here, in order to effectuate their settlement agreement, the parties seek certification of twenty-six statewide Settlement Classes – a Roundup Ready® Soybean Seed Purchaser Class and a Genetically-Modified Corn Seed Purchaser Class for each of the thirteen affected states in this litigation.  Those classes are composed of all persons and entities within each such statewide class who, at any point from January 1, 1996 to July 14, 2009, are or were signatories or otherwise subject to Monsanto Technology Agreements or Pioneer Technology Agreements and who, (a) from the 1998 through the 2001 crop years (both inclusive), paid Monsanto a separately-charged Technology Fee, through Monsanto's seed manufacturer licensees or those licensees' agents or authorized dealers, and who accordingly pursue damages and declaratory

---

determine whether final approval of the settlement should be given.") (citations omitted); *Woodward v. NOR-AM Chem. Co.*, No. 94-0780-CB-C, 1996 WL 1063670, 14 (S.D. Ala. May 23, 1996) (where proposed class action is settled prior to certification, "the appropriate procedure is for the Court to conditionally certify a 'temporary settlement class' for the purpose of "providing notice to putative members of a proposed class of the terms of the anticipated settlement and of their opportunity to 'opt out' and/or object").

[13] *E.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) ("In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement.") (citing authorities); *Bronson v. Board of Educ. of City Sch. Dist. of Cincinnati*, 604 F. Supp. 68, 71 (S.D. Ohio 1984) ("Before a court can approve a proposed settlement, it must give the class members notice of the proposed settlement and an opportunity to comment upon it."); *In re Cmty. Bank of N. Va.*, 2008 WL 239650, at *8 ("[N]otice must be sent to the class members informing them of the . . . settlement terms, providing them an opportunity to be heard and, if they so choose, to opt-out.  . . .  [T]his is an issue of due process.").

and/or injunctive relief or (b) from the 2002 crop year (inclusive) to the present purchased
Roundup Ready® soybean seeds, Roundup Ready® corn seeds, and/or YieldGard® corn seeds
from Monsanto or any of its subsidiaries, or through one or more of Monsanto's other seed
manufacturer licensees or their agents or authorized dealers without paying a separately-charged
Technology Fee, and who pursue only declaratory and/or injunctive relief, except for those in
Kansas and Wisconsin, who also claim damages for this latter time period.  *See* Ex. 1
(Agreement ¶ 1(f)).

###### 2. <u>Standards for Certifying Settlement Classes</u>

In order to certify settlement classes, which this Court will be considering at the final
approval stage if this application for preliminary approval is granted, the Rule 23 criteria need to
be satisfied, save the Rule 23(b)(3) inquiry into whether a class action trial would be
manageable.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Nevertheless, courts have long recognized that "[t]he requirements for class certification
are more readily satisfied in the settlement context than when a class has been proposed for the
actual conduct of the litigation."    *White v. NFL*, 822 F. Supp. 1389, 1402 (D. Minn. 1993);
*accord In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 178 (5th Cir. 1979) ("[I]t is altogether
proper and consistent for a court to certify a class for settlement purposes, while it might have
had more difficulty reaching this determination in a different context."); *Bowling v. Pfizer, Inc.*,
143 F.R.D. 141, 159 (S.D. Ohio 1992) ("[T]he requirements of Rule 23 are more easily satisfied
for settlement purposes than for litigation purposes."); *see also Chemi v. Champion Mortg.*, No.
2:05-CV-l238 (WHW), 2009 WL 1470429, at *9 (D.N.J. May 26, 2009) (noting that "[t]he
determination at [the] preliminary stage involves a lenient standard and generally results in

'conditional certification' of a class"); *Greer v. Shapiro & Kreisman*, No. 00-0647, 2001 WL 1632135, at *2 (E.D. Pa. Dec. 18, 2001) ("While the settlement class must satisfy each of the requirements of Rule 23(a) and 23(b)(3), the fact of settlement is relevant to a determination of whether the proposed class meets the requirements imposed by the Rule."). As one court has explained, "[t]he rationale behind the loosening of the Rule 23 requirements for settlement classes is to encourage sweeping settlements of complex disputes." *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 157-58 (S.D. Ohio 1992).

Ordinarily, Rule 23 provides that an action may be maintained as a class action if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four requirements are commonly referred to as, respectively, the prerequisites or elements of "numerosity," "commonality," "typicality," and "adequacy" (or "adequacy of representation"). *See, e.g.*, *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982); *Sample v. Monsanto Co.*, 218 F.R.D. 644, 647 (E.D. Mo. 2003), *aff'd sub nom. Blades v. Monsanto*, 400 F.3d 562 (8th Cir. 2005); *Carroll v. Sisco*, No. 4:00-CV-00864, 2007 WL 209924, at *4 (E.D. Mo. Jan. 23, 2007).

In addition to satisfying the four elements of Rule 23(a), the class must satisfy the requirements of one of three subdivisions of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614. As is relevant here, subsection (b)(3) requires a showing that

> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).   The Rule 23(b)(3) requirements have been distilled into two general elements, commonly referred to as the "predominance" and the "superiority" prongs.  *E.g.*, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 264 (D. Minn. 2001).

### 3.  <u>The Settlement Classes Satisfy All of the Rule 23 Prerequisites</u>

#### (a) <u>The Classes Are So Numerous as to Make Joinder of All of Their Members Impracticable</u>

The Court should be satisfied that the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  "Impracticable," however, "does not mean that joinder must be impossible," but only that it is "extremely difficult or inconvenient to join all members of the class."  *Morgan v. UPS*, 169 F.R.D. 349, 355 (E.D. Mo. 1996).  Moreover, Plaintiffs do not need to specify an exact number of class members and need show only "some evidence or reasonable estimate of the number of purported class members."  *Wakefield v. Monsanto Co.*, 120 F.R.D. 112, 115 (E.D. Mo. 1988) (internal citations omitted).  Numerosity may be shown through common sense assumptions.  *Hage v. Gen'l Serv. Bureau*, No. 8:01CV367, 2002 U.S. Dist. LEXIS 16774, at *8 (D. Neb.  Mar. 26, 2002) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. Unit A 1981) ("federal trial courts are quite willing to accept

common sense assumptions in order to support a finding of numerosity") (in turn citing treatise)); *Biben v. Card*, No. 84-0844-CV-W-6, 1986 WL 1199, at *13 n.7 (W.D. Mo. Jan. 6, 1986).

There is no absolute number that satisfies the numerosity requirement, although courts have recognized that a class of approximately forty members generally suffices.  *See Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.") (citing treatise); *see also Morgan*, 169 F.R.D. at 355 (noting that courts within the Eighth Circuit have certified classes with fewer than forty members).

Here, there can be no dispute that the number of soybean and corn farmers who purchased the seed products at issue during the relevant time period in each of the thirteen states number in the hundreds, if not the thousands, and that, therefore, the numerosity element is easily satisfied here.

### (b)  There Are Questions of Law or Fact Common to All Class Members

Rule 23(a) also requires that there be "common questions of law or fact among members of the class."  Fed. R. Civ. P. 23(a).  This is not a difficult standard to meet.  *See In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999) ("[T]he commonality requirement imposes a very light burden on the plaintiff seeking to certify a class and is easily satisfied.").  "As long as there is at least one common legal question that relates to the resolution of the litigation, commonality is met."  *Bradford v. Union Pac. R.R.*, No. 05-CV-4075, 2007 U.S. Dist

LEXIS 72951, at *18 (W.D. Ark. Sept. 28, 2007); *accord Halbach v. Great-West Life & Annuity Ins. Co.*, No. 4:05CV02399, 2007 WL 1018658, at *4, 2007 U.S. Dist LEXIS 24252, at *14 (E.D. Mo. Apr. 2, 2007); *see also Paxton*, 688 F.2d at 561 ("The rule does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.")  (internal citations omitted).

Commonality is usually found when class members' claims derive from a "common nucleus of operative facts."  *Ellis v. O'Hara*, 105 F.R.D. 556, 560 (E.D. Mo. 1985).  Here, as discussed below in Section III-B-3(e), the core questions of law or fact are not only common to all class members, but also predominant in this litigation.  Consequently, the Rule 23(a) commonality test is necessarily satisfied here.[14]

### (c) **Plaintiffs' Claims Are Typical of Those of Absent Class Members**

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a).  The burden of showing typicality "is not an onerous one" and the requirement is generally satisfied if "the claims of both the class representatives and absent class members stem from a single event *or*

---

[14] A plaintiff who satisfies the more stringent predominance-of-common questions test *a fortiori* satisfies the commonality requirement.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001) ("The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)."); *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 635 (N.D. Okla. 2000) ("[A]ny plaintiff who meets the predominance test will necessarily satisfy the Rule 23(a) commonality test."); *Hanson v. Acceleration Life Ins. Co.*, No. A3-97-152, 1999 WL 33283345, at *9 (D.N.D. Mar. 16, 1999) ("Rule 23(a)(2)'s commonality requirement is subsumed under the more stringent predominance requirement of Rule 23(b)(3).").

*are based on the same legal or remedial theory*." *Paxton*, 688 F.2d at 561-62 (citation and internal quotation marks omitted; emphasis added).[15]

Typicality does not require that class representatives' claims be identical to those of absent class members. If the claims arise out of the same course of conduct, factual variations between claims do not preclude class certification. *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977) (same); *accord Egge*, 208 F.R.D. at 268 ("[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences.") (citation and internal quotation marks omitted).

In the instant case, Plaintiffs' claims are typical of the claims of absent members of the Settlement Classes. During the relevant time period, each Plaintiff was a purchaser of the same soybean or corn seed products as are at issue with respect to Settlement Class that he seeks to represent and made seed purchases in that state. *See* Second Amended Complaint (D.I. 368), ¶¶ 5-29. Thus, Plaintiffs' claims and those of the absent members of every proposed Settlement Class arise from the same conduct by Monsanto and its co-conspirators, and all Plaintiffs assert the same legal claims as are asserted on behalf of the respective Settlement Class(es) that they seek to represent. The fact that the damages are not identical is of no moment. *See Sonmore*, 206 F.R.D. at 262 (typicality not defeated if class members may have had "differing levels or types of damages"); *see also Hage*, 2002 U.S. Dist. LEXIS 16774, at *15 (plaintiffs established

---

[15] *Accord DeBoer*, 64 F.3d at 1174 (typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff"); *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 269 (D. Minn. 2002) ("Typicality is satisfied when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members.") (citation and internal quotation marks omitted); *Hage*, 2002 U.S. Dist. LEXIS 16774, at *15 (typicality "is easily met").

typicality by alleging that all claims arose out of defendant's common course of conduct in its collection practices, despite factual variations and differences in amount of damages recoverable by plaintiffs).  Indeed, as this Court has recognized, individual damages questions are *typical* in class actions. *E.g.*, *In re McDonnell Douglas Corp. Secs. Litig.*, 98 F.R.D. 613, 617 (E.D. Mo. 1982) ("The amount of damage is nearly always an individual question and can usually be determined by the application of a mechanical formula").

### (d)  Plaintiffs Will Fairly and Adequately Represent the Interests of Absent Class Members

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods.*, 521 U.S. at 626 n.20 (citation and internal quotation marks omitted).

The focus here is "whether:  (1) the class representatives have common interests with the members of the class; and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  *Paxton*, 688 F.2d at 562-63; *Wakefield*, 120 F.R.D. at 117 (same); *accord Owner Operator Indep. Drivers Ass'n  v. New Prime, Inc.*, 213 F.R.D. 537, 544 (W.D. Mo. 2002) (adequacy requirement satisfied if (1) "the plaintiff's attorney is qualified, experienced and will competently and vigorously prosecute the suit," and (2) "the interest of the class representative is not antagonistic to or in conflict with other members of the class"), *aff'd*, 339 F.3d 1001 (8th Cir. 2003).  Absent evidence to the contrary, a proposed class

representative's adequacy of representation is presumed.[16]

"The adequate representation requirement overlaps with the typicality requirement in that in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *Bradford*, 2007 U.S. Dist. LEXIS 72951, at *22.  Here, Plaintiffs have strong incentives to protect the interests of absent members of the Settlement Classes because, as explained above in Section III-B-3(c), their claims and those of absent class members arise from the exact same conduct by Monsanto and its co-conspirators concerning the purchase of the same seed products as were bought by absent class members, and they assert the same legal claims concerning the payment of supracompetitive prices for genetically-modified seeds containing Monsanto's licensed technologies, a product that is used for (and, indeed, is essential to) their livelihoods.  Thus, all of the proposed class representatives have a substantial stake in this litigation and a strong incentive to vigorously pursue their claims.[17]  Furthermore, Plaintiffs have

---

[16] *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002); *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000); *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 330 (W.D. Mich. 2000); *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 410 (N.D. Miss. 2000).

[17] Plaintiffs have already demonstrated that willingness.  To date, they have produced voluminous records concerning their seed purchases and farming operations, as well as tax information.  Those documents total many thousands of pages.  In addition, they have responded to Defendants' interrogatories and requests for admission, and they have each been deposed.  In short, Plaintiffs have demonstrated their fitness to represent the Settlement Classes through the very significant amount of time that they have already devoted to this litigation.  *E.g.*, *In re Ins. Mgmt. Solutions Group, Inc. Secs. Litig.*, 206 F.R.D. 514, 517 (M.D. Fla. 2002) (adequacy shown where, *inter alia*, plaintiff "attended his deposition and answered interrogatories"); *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999) ("For a plaintiff who wishes to be a class representative, general knowledge [of the case] and a participation in discovery are enough.") (citation and internal quotation marks omitted); *Newton v. Kroger Co.*, 83 F.R.D. 449, 453 (E.D. Ark. 1979) (adequacy shown where "[t]he plaintiff appears to have pursued discovery at a reasonable pace and thus far has given the impression that he is a competent and vigorous litigant").  Moreover, most of the proposed class representatives, when sued by Monsanto in its

no material conflicts of interest with absent class members.[18]

The adequacy element is also met here because Plaintiffs' counsel are highly experienced in class action litigation, antitrust litigation, and litigation involving farmers.  *See Wakefield*, 120 F.R.D. at 117 (plaintiffs' counsel's previous experience in numerous class actions rendered them adequate representatives of class).  Indeed, as with the proposed representatives themselves, "[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action."  *Halbach*, 2007 WL 1018658, at *5, 2007 U.S. Dist. LEXIS 24252, at **15-16 (citing *Morgan*, 169 F.R.D. at 357).[19]

---

[18] In this respect, "[t]he interests of the [named] plaintiffs do not have to be identical to interests of every class member."  *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1148 (8th Cir. 1999).  "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Gentry*, 102 F.R.D. at 494 (citing authorities).  Speculative, theoretical, or peripheral antagonisms do not render proposed representatives inadequate.  *See Reynolds v. NFL*, 584 F.2d 280, 286 (8th Cir. 1978) ("theoretical conflicts of interest did not require sub classification, [or] disqualification of the named parties and class counsel"); *In re Workers' Compensation*, 130 F.R.D. 99, 108 n.7 (D. Minn. 1990) ("Naked allegations of antagonism are insufficient to undermine class certification under Rule 23(a)(4).").

[19] Unless provided otherwise by statute, when a court certifies a settlement class, it appoints settlement class counsel under Fed. R. Civ. P. 23(g)(1).  *E.g*., *Gerardo v. Quong Hop and Co.*, No. C 08-3953 JF (PVT), 2009 WL 1974483, at *3 (N.D. Cal. July 7, 2009) (preliminarily approving settlement, provisionally certifying settlement class, and appointing settlement class counsel); *In re Ready-Mixed Concrete Antitrust Litig*., No. 1:05-cv-00979-SEB-JMS, 2007 WL 3334787, at *2 (S.D. Ind. Nov. 8, 2007) (same); *Stewart v. CenterPoint Energy Res. Corp.*, No. 05-CV-1502RHKAJB, 2006 WL 839509, at *1 (D. Minn. Mar. 28, 2006) (same).  Here, the Court appointed Plaintiffs' counsel as Class Counsel on an interim basis in January 2006 (D.I. 113).  Because that existing interim appointment makes an additional appointment at the preliminary approval stage unnecessary, Plaintiffs will seek appointment of Class Counsel on their motion for final approval of the Settlement.

### (e) Questions of Law or Fact Common to All Settlement Class Members Predominate

The focus of Rule 23(b)(3)'s predominance of common questions test is on whether the proposed class "is seeking to remedy a common legal grievance." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004) (citation and internal quotation marks omitted); *accord Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 520 (D.N.D. 2005) (same). "There is no bright-line boundary for determining predominance." *Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. Civ. 02-1236 (RHK/AJB), 2003 WL 1955169, at *5 (D. Minn. Apr. 21, 2003) (citation and internal quotation marks omitted). Rather, predominance is satisfied by showing that "a sufficient constellation of common issues binds class members together." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000).[20]

Predominance does not require that all questions of law or fact be common. Rather, it requires only that the common questions *predominate* over individual questions. *Carpe*, 224 F.R.D. at 458 ("The fact that some individual questions will be involved in the case does not preclude a finding that the common issues will predominate."); *Dirks v. Clayton Brokerage Co. of St. Louis*, 105 F.R.D. 125, 132 (D. Minn. 1985) (same).[21]

---

[20] "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial *dis* economy." *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 161 (S.D. Iowa 2001) (citing cases; internal quotation marks omitted).

[21] *Accord Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388, 395 (D. Neb. 2004) ("[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.") (citation and internal quotation marks omitted); *Jackson v. Rapps*, 132 F.R.D. 226, 231 (W.D. Mo. 1990) ("Common questions exist and predominate when

Also, the common questions of law and fact "need not be dispositive of the litigation." *Carpe*, 224 F.R.D. at 458; *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) (same).  Nor is the predominance element a quantitative test.  A *single* common question may be the overriding issue in a case.  *E.g.*, *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 27 (D. Mass. 2003) ("A single, central issue as to the defendant's conduct vis a vis class members can satisfy the predominance requirement even when other elements of the claim require individualized proof."); *Brancheau*, 177 F.R.D. at 660.

The central issues in this litigation with respect to each of the Settlement Classes are whether Monsanto and its co-conspirators conspired to violate various federal and state antitrust and other laws in the pricing of the genetically-modified corn and soybean seed products at issue, and whether Monsanto has monopolized or sought to monopolize the market for those products. Specific common questions include whether Defendants participated in, committed, or are otherwise responsible for one or more of the violations of law that Plaintiffs complain of; whether Monsanto's and/or other Defendants' conduct constitute the violations of law alleged by Plaintiffs; and whether Monsanto has monopoly power in the relevant markets.  Because these overriding questions focus on Monsanto's and its co-conspirators' conduct – and not on Plaintiffs' conduct – and because they concern the core question of liability, they are predominant.  *See Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 569 (D. Minn. 2003) ("The predominance inquiry focuses primarily on common questions regarding liability.") (citing cases); *In re McDonnell Douglas Corp. Secs. Litig.*, 98 F.R.D. at 616 ("in determining whether

there is a common nucleus of operative facts even though there may be lacking complete identity.") (citation and internal quotation marks omitted).

common questions predominate, courts focus on the liability issues")   (citing authorities).[22] Indeed, the Supreme Court and numerous other courts, including in this Circuit, recognize that the predominance test is particularly likely to be satisfied in antitrust cases.[23]  Moreover, because all of Plaintiffs' claims entail the application of federal antitrust law or, as to their respective state law claims, the application of only one state's law, the Court will not have to grapple with the application of multiple states' laws to individual claims.[24]

---

[22] *See also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003) ("common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members"); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("[T]o determine predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members.") (citing cases); *Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164, 175 (E.D.N.Y. 2001) (inquiry that "necessarily focuses on defendants' conduct, that is, what defendants did, rather than what plaintiffs did" predominates over individual questions) (citation and internal quotation marks omitted); *Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 439 (W.D. Wis. 1997) ("because proof of liability will focus on defendants' conduct and not defendants' relationship with individual plaintiffs, it is a question common to the entire proposed class"); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650 (C.D. Cal. 1996) (common questions predominated where claim focused on defendant's conduct, not defective product's effect on plaintiffs).

[23] *E.g.*, *Amchem Prods.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (predominance test ordinarily met in antitrust cases "because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case") (emphasis omitted); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("[A]s a general rule in antitrust price-fixing cases, questions common to the members of the class will predominate over questions affecting only individual members.") (citing cases); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 411877, at *12 (D.N.J. Feb. 17, 2009) ("[B]ecause the clear focus of an antitrust class action is on the allegedly deceptive conduct of the defendant and not on the conduct of individual class members, common issues necessarily predominate.") (citing cases).

[24] *See Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008) (no predominance impediment to certification of multistate class asserting state law claims if only one state's law applies); *cf. Cole v. Gen'l Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) ("[I]if multiple states' laws apply and those laws vary, the variations may impact whether common issues of law

### (f)  Class Treatment Is Superior to Alternative
### Forms of Adjudication of These Claims

In addition to the predominance requirement, Rule 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Ordinarily, the factors that determine whether class treatment is superior to other methods of adjudication include (a) the interest of class members in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  As noted above in Section III-B-2, however, the sub-element of case manageability is irrelevant to the issue of certification of settlement classes.  *See Amchem Prods.*, 521 U.S. at 620.

As discussed in Section III-B-3(d) above, common questions predominate because the central inquiry will be on liability and that inquiry will focus solely on the conduct of Monsanto and its co-conspirators.  The predominance of common questions makes a class action superior for the adjudication of this controversy.  *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009) ("If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions."); *Lockwood Motors*, 162 F.R.D. at 582.

Moreover, absent class treatment, the many thousands of soybean and corn farmers who comprise the Settlement Classes would never have their day in court because they would be

---

and fact predominate among the class members."); *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 383-84 (S.D. Ill. 2008) ("the difficulty of applying the laws of multiple states to a class" will "generally defeat[] predominance and manageability in the class-action context").

required to undertake the burden and risk of pursuing individual actions.  This would include the enormous cost of presenting expert proof.  Individual suits, however, would be cost-prohibitive given the amount at stake for individual class members, even those with large farming operations who have expanded substantial sums on the seed products at issue during the relevant time period, because the enormous litigation costs would outweigh even the most sizable potential recovery of any class member.  Courts in this Circuit have recognized that this so-called "negative value" factor is "the most compelling rationale for finding superiority in a class action."  *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 379 & n.175 (E.D. Ark. 2007) (citation and internal quotation marks omitted); *accord In re Baycol Prods. Litig.*, 218 F.R.D. 197, 210 (D. Minn. 2003).  In this respect, the Supreme Court and other courts have noted that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods.*, 521 U.S. at 617 (citation and internal quotation marks omitted).[25]

    Even assuming *arguendo* that individual class members would not lack the incentive to

---

[25] *Accord Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the Plaintiffs to pool claims which would be uneconomical to litigate individually," and that, in cases where individual class members' damages are small, "most of the Plaintiffs would have no realistic day in court if a class action were not available"); *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968) ("By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation."); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) ("Class actions are a superior method of adjudication where a large number of plaintiffs may have been injured, but not to an extent to induce the instigation of individual litigation.").

bring their own suit if class treatment were denied, there can be no genuine doubt that multiple suits would result in repetitive and time-consuming adjudications of the same factual and legal issues concerning the conduct of Monsanto and its co-conspirators, requiring countless juries to weigh the same evidence over and over again to resolve the core conspiracy and monopolization questions.  These are the very types of inefficiencies that the class action mechanism is designed to avoid.  *See Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) ("The very purpose to be served by a class action is the opportunity it affords to prevent a multiplicity of suits based on a wrong common to all."); *Brancheau v. Residential Mortg. Group, Inc.*, 177 F.R.D. 655, 661 (D. Minn. 1997) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.") (citation and internal quotation marks omitted); *Lockwood Motors*, 162 F.R.D. at 582 (superiority component satisfied where class prosecution of claims would "limit duplicative litigation, limit the burden on this and other courts, and provide a uniform result for similarly situated parties"); *In re Mellon Bank S'holder Litig.*, 120 F.R.D. 35, 38 (W.D. Pa. 1988) (superiority found where "[t]he judicial system, the attorneys, the plaintiffs and the defendants will save a great deal of time and money by avoiding duplicative lawsuits"); *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 272 (D. Minn. 2002) (class treatment superior where putative class members would "clog court dockets with multiple and scattered suits").[26]

---

[26] *See also Engeseth v. County of Isanti*, No. 06-2410, 2007 WL 3102074, at *8 (D. Minn. Oct. 23, 2007) (class treatment superior, "as it will allow for the avoidance of duplicative actions, and expeditiously resolving common issues is in the best interests of the system and the parties"); *Bokusky v. Edina Realty, Inc.*, No. 3-92 Civ. 223, 1993 WL 515827, at *10 (D. Minn. Aug. 6, 1993) (noting that "[j]udicial economy is an appropriate factor to consider in determining the superiority of the class action to other methods," and holding that certification was warranted

Besides these considerations, Defendants themselves have long conceded the desirability of concentrating the litigation in a single forum, inasmuch as from the inception of this litigation Monsanto had argued that Plaintiffs' antitrust claims were subject to the forum selection clause in the Monsanto Technology Agreements to which Plaintiffs are parties, and Monsanto even went so far as to argue that Plaintiffs had infringed its patents by not filing their individual actions in this Court in the first instance.[27]

In sum, conditional certification of the Settlement Classes is appropriate.

## C.  The Court Should Approve the Proposed Notice to Class Members

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1).  In addition,"[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B) (previously codified at Fed. R. Civ. P. 23(c)(2)).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 113 (2d Cir. 2005) (citing cases).  The factors to be taken into

---

because, absent class treatment, "the courts could be clogged with thousands of individual claims; such a scenario is highly inefficient").

[27] That clause mandated either this Court or the Missouri state court in St. Louis County as the forum for claims arising under Monsanto Technology Agreements.  It is unnecessary for Plaintiffs to reargue here why the forum selection clause did not apply to their antitrust claims. The point here is that given the heavy-handed lengths to which Monsanto resorted because these suits were not initially filed in this Court, Defendants cannot now genuinely dispute the desirability of these claims being concentrated before this Court.

account in determining what is "the best practicable notice under the circumstances" as contemplated by Rule 23(c)(2). These include "(i) the cost of giving notice by various methods, (ii) the resources of the parties, (iii) the stake of each Class Member[,] and (iv) the likelihood that significant numbers of Class Members might desire to exclude themselves from the Class or appear individually." *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, No. 99-MDL-1309 PAM/JCL, 2004 WL 2931352, at *10 (D. Minn. Dec. 16, 2004).

Ultimately, however, Rule 23 "leaves the form of the notice to the court's discretion." *Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1337 (1st Cir. 1991); *accord In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) ("While due process and Rule 23(e) require notice of a settlement to be given, the content and form of that notice are left to the court's discretion.") (citation and internal quotation marks omitted); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539 (N.D. Ga. 1992) ("What efforts are reasonable under the circumstances of the case [is a matter that] rests initially in the sound discretion of the judge before whom the case is pending.") (citation and internal quotation marks omitted); *Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 68 (S.D. Tex. 1977) ("Rule 23(e) leaves the form and extent of notice to the Court's discretion.").

In the instant matter, Plaintiffs propose to furnish notice of the proposed settlement to prospective class members by publication. *See* Ex. 1 (Agreement ¶ 6 & Exs. B-C). Publication notice satisfies both Rule 23(e) and the Fifth Amendment's due process clause under the circumstances. The proposed Settlement Classes (which consist of purchasers in thirteen states during the period at issue of genetically-modified corn and soybean seeds containing Monsanto's licensed, genetically-modified seed technologies) are thousands of farmers dispersed throughout

thirteen states.  Moreover, throughout class certification discovery, Defendants have contended that there is no central list of seed purchasing farmers.  Correspondingly, any attempt to compile such a list (for example, by contacting each of the seed manufacturers that licensed Monsanto's technologies) would be exceedingly difficult and, given the gross amount of the settlement, cost prohibitive.

Legions of courts have recognized that notice to class members by publication is acceptable where, as here, individual notice is simply not feasible.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977) ("In every case, reasonableness is a function of anticipated results, costs, and amount involved. A burdensome search through records that may prove not to contain any of the information sought clearly should not be required."); *Bachman v. Miller*, 559 F. Supp. 150, 153 & n.9 (D.D.C. 1982) ("publication has been widely recognized as a proper method of notice for class members who cannot reasonably be individually identified and/or located"; given estimated 25,000-35,000 class members, "it [wa]s not difficult to understand why" individual notice was not employed) (citing cases); *Pigford v. Veneman*,  355 F. Supp. 2d 148, 162 (D.D.C. 2005) ("When all class members cannot be identified, . . . practical issues of effectuating notice arise and other methods, such as publication in newspapers or periodicals, are deemed sufficient."); *Harris v. Reeves*, 761 F. Supp. 382, 393 (E.D. Pa. 1991) (impractical to provide individual notice because class was very large, not all members could be identified, and many members could be identified "only after great time and expense"); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. at 537-51 (publication notice sufficient where it was impossible to identify all members of sprawling class of domestic airline ticket purchasers); *Booth v. Gen'l Dynamics Corp.*, 264 F. Supp. 465, 472 (N.D. Ill. 1967)

(sheer volume of class of several hundred thousand members would require more than "reasonable effort" to identify and furnish individual notice to members, and best practicable notice was by publication) (quoting language now codified at Rule 23(c)(2)(B)); *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y. 1969) (weighing cost of individual notice against amount of recovery to each class member and concluding that requiring individual notice "would . . . stymie the purpose of the class action device as a means of privately requiring fiduciaries to toe the mark"); *In re LG/Zenith Rear Projection Television Class Action Litig.*, No. 06-5609 (JLL), 2009 WL 455513, at *2 (D.N.J.  Feb. 18, 2009) ("Publication notice is considered a sufficient means to reach class members whose identities and addresses are not known.").[28]

Moreover, although courts have recognized that even a single instance of publication in just one periodical can satisfy Rule 23(c), *In re LG/Zenith Rear Projection Television Class Action Litig.*,  2009 WL 455513, at *2 (citing *In re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 32 (W.D. Okla. 1972)); *accord Monaco v. Carpinello*, No. CV-98-3386-CPS, 2007 WL 1174900, at *1 (E.D.N.Y. Apr. 19, 2007) (court approved one-time publication of in single

---

[28] Cases within this Circuit where individual notice of a class action settlement has been required are those in which the facts strongly suggested that the identity of class members was readily ascertainable from a single source (namely, the defendant's records) or where the class was quite small (and hence the burden and cost of individual notice was minimal).  *E.g.*, *Bryant v. Bonded Account Service/Check Recovery, Inc.*, 208 F.R.D. 251, 260 (D. Minn. 2000) (given that class numbered only 175 members, court estimated that cost of preparing and mailing class notice would not exceed $200); *Esler v. Northrop Corp.*, 86 F.R.D. 20, 40 (W.D. Mo. 1979) ("In this action, the parties are able to identify the name and address of each member of the proposed plaintiff class. Considering that there are 186 class members, it is concluded that prepaid first class mail, properly addressed to the last known address of each individual class member, constitutes reasonable notice."); *Gries v. Std. Ready Mix Concrete, L.L.C.*, No. C07-4013-MWB, 2009 WL 427281, at *11 (N.D. Iowa  Feb. 20, 2009) (directing individual notice to plan participants in ERISA action); *Moffitt v. Johnson*, No. 4:05CV00963 JLH, 2007 WL 2904004, at **3-4 (E.D. Ark. Oct. 2, 2007) (directing individual notice to class of arrestees); *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, 2004 WL 2931352, at **9-10 (directing individual and publication notice in action brought by purchasers of life insurance policies).

newspaper notice of settlement to members of subclass of individuals subject to civil commitment), here the Agreement proposes a much more fulsome publication campaign, consisting of print advertisements in three magazines with broad circulation among farmers in the Settlement Classes (*Progressive Farmer*, *Farm Journal*, and *Successful Farming*), and electronic banner and newsletter advertisements posted through DTN, an electronic news service to which many farmers subscribe.  Thus, this proposed notice campaign is reasonably calculated to reach a wide audience of prospective class members.  *Cf. Simer v. Rios*, 661 F.2d 655, 667 n.22 (7th Cir. 1981) (publication notice of settlement held inadequate where readership of publications that were chosen consisted of attorneys and advocates rather than class members).

As for their content, the proposed Notice and Publication Notice satisfy Rule 23(e) and due process in that they provide ample explanation of both the litigation and the settlement.  The notices advise prospective class members of the terms of the settlement (including who it covers, the settlement consideration, and what will be deducted from that consideration); that it is a settlement only with Pioneer and DuPont; and the right to either opt out of the settlement, or to lodge an objection to the settlement and to personally appear at the Rule 23(e)(2) fairness hearing.  The notices also advise prospective members that they may obtain further information by contacting the Settlement Administrator through a toll-free number or by accessing a dedicated website (www.gmseedsettlement.com) that will contain information pertinent to the case and settlement (including copies of pertinent papers).   *See* Agreement, Exs. B-C; *In re Integra Realty Res.*, 262 F.3d at 1111 ("The standard for the settlement notice under Rule 23(e) is that it must fairly apprise the class members of the terms of the proposed settlement and of their options.") (citation and internal quotation marks omitted); *In re PaineWebber Ltd. P'ships*

-41-

*Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) (notice of class settlement adequate if it "apprises the class members of the salient terms of the settlement and affords them a reasonable opportunity to present any objections"; "[t]he notice need not be highly specific, and indeed [n]umerous decisions, no doubt recognizing that notices to class members can practicably contain only a limited amount of information, have approved 'very general description[s] of the proposed settlement'") (citing cases; internal quotation marks omitted); *Larson v. Sprint Nextel Corp.*, No. 07-5325 (JLL), 2009 WL 1228443, at *12 (D.N.J. Apr. 30, 2009) ("Rule 23(e) settlement notices need not be highly specific and can supply information by incorporation of settlement documents and by linking to a website.") (internal quotation marks omitted).  In sum, both the manner and content of proposed class notice satisfy due process and Rule 23(e).

## IV.    CONCLUSION

For the foregoing reasons, the Court should preliminarily approve Plaintiffs' Settlement with Defendants Pioneer and DuPont; conditionally certify the Settlement Classes and appoint Plaintiffs as representatives of their respective proposed Settlement Class(es); approve the manner and form of proposed notice to be furnished to conditional class members; and schedule a Fairness Hearing under Fed. R. Civ. P. 23(e)(1)(C) for the purpose of determining whether the settlement is fair, reasonable, and adequate and, therefore, deserving of final approval.

**Dated:**  July 22, 2009

Respectfully submitted,

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**

By: /s/  Adam J. Levitt_____
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Tel:  (312) 984-0000
Fax:  (312) 984-0001

Fred Taylor Isquith
Scott J. Farrell
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York  10016
Tel:  (212) 545-4600
Fax:  (212) 545-4653

Stephen A. Weiss
Diogenes P. Kekatos
**SEEGER WEISS LLP**
One William Street
New York, New York  10004
Tel:  (212) 584-0700
Fax:  (212) 584-0799

***Plaintiffs' Interim Class Counsel***

-43-

Don M. Downing, Bar #41786
**GRAY, RITTER & GRAHAM, P.C.**
701 Market Street, Suite 800
St. Louis, Missouri  63101
Tel:  (314) 241-5620
Fax:  (314) 241-4140

*Plaintiffs' Liaison Counsel*


Richard A. Lockridge
Robert K. Shelquist
Craig S. Davis
Matthew B. Johnson
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota  55401
Tel.:  (612) 339-6900
Fax:  (612) 339-0981

Van Bunch
Tonna K. Farrar
Todd D. Carpenter
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
57 Carriage Hill
Signal Mountain, Tennessee  37377
Tel.:  (423) 886-9736
Fax:  (423) 886-9739

J. Gerard Stranch, IV
Steven J. Simerlein
**BRANSTETTER, STRANCH &
  JENNINGS, PLLC**
227 Second Avenue North
Nashville, Tennessee  37201
Tel.:  (615) 254-8801
Fax:  (615) 255-5419

Charles F. Speer
Kirra N. Jones
**SPEER LAW FIRM, P.A.**
The Stilwell Building
104 West 9th Street
Kansas City, Missouri  64105
Tel.:  (816) 472-3560
Fax:  (816) 421-2150

Sarah Vogel
**SARAH VOGEL LAW FIRM, P.C.**
222 North 4th Street
Bismarck, North Dakota  58501
Tel.:  (701) 221-2911
Fax:  (701) 221-5842

Roxanne B. Conlin
**ROXANNE B. CONLIN AND ASSOCIATES, P.C.**
319 7th Street, Suite 600
Des Moines, Iowa  50309
Tel.:  (515) 283-1111
Fax:  (515) 282-0477

Ann Lugbill
2406 Auburn Avenue
Cincinnati, Ohio  45219
Tel.:  (513) 784-1280
Fax:  (513) 784-1449

Richard K. Levi
**ERNEST FOSTER EDER & LEVI**
114 West 3rd Street
P.O. Box 430
Rushville, Indiana  46173
Tel.:  (765) 932-4118
Fax:  (765) 932-4486

Richard J. Helsper
**GLOVER & HELSPER, P.C.**
100 22nd Avenue, Suite 200
Brookings, South Dakota  57006
Tel.:  (605) 692-7775
Fax:  (605) 692-4611

James A. Knauer
**KROGER GARDIS & REGAS, LLP**
111 Monument Circle, Suite 900
Indianapolis, Indiana  46204
Tel.:  (317) 692-9000
Fax:  (317) 264-6832

Gene Summerlin
Craig Hoffman
**OGBORN, SUMMERLIN & OGBORN, P.C.**
210 Windsor Place
330 South Tenth Street
Lincoln, Nebraska  68508
Tel.: (402) 434-8040
Fax:  (402) 434-8044

Tim Semelroth
**RICCOLO & SEMELROTH, P.C.**
APAC Building, Suite 1140
425 2nd Street SE
Cedar Rapids, Iowa  52401
Tel.: (319) 365-9200
Fax: (319) 365-1114

Robert J. Sharkey
**VANDERVOORT, CHRIST & FISHER, PC**
Fifth Third Bank Building, Suite 312
67 West Michigan Avenue
Battle Creek, Michigan  49017
Tel.:  (269) 965-7000
Fax:  (269) 965-0646

Richard J.R. Raleigh, Jr.
**WILMER & LEE, P.A.**
100 Washington Street, Suite 200
Huntsville, Alabama  35801
Tel.: (256) 533-0202
Fax:  (256) 533-0302

***Additional Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I, Adam J. Levitt, one of Plaintiffs' counsel, hereby certify that, on July 22, 2009, I caused a copy of the foregoing ***Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants DuPont and Pioneer, Conditional Certification of Settlement Classes, and Approval of Notice to Be Furnished to Settlement Classes*** to be served upon the following counsel, by the Eastern District of Missouri's ECF filing system, as well as by .pdf email:

Stephen H. Rovak, Esq., #4218
Stephen J. O'Brien, Esq., #27146
**SONNENSCHEIN NATH &**
  **ROSENTHAL LLP**
One Metropolitan Square, Suite 3000
St. Louis, Missouri  63102
Tel.:  (314) 241-1800
Fax:  (314) 259-5959

Andrew Rothschild, Esq., #4214
C. David Goerisch, Esq., #77207
**LEWIS, RICE & FINGERSH, L.C.**
500 North Broadway, Suite 2000
St. Louis, Missouri  63102
Tel.:  (314) 444-7600
Fax:  (314) 241-6056

Philip D. Bartz, Esq.
Donna M. Donlon, Esq.
Nicholas S. Sloey, Esq.
**MCKENNA LONG & ALDRIDGE LLP**
1900 K Street, N.W.
Washington, DC  20006
Tel.:  (202) 496-7500
Fax:  (202) 496-7756

James P. Denvir, Esq.
Amy J. Mauser, Esq.
Scott E. Gant, Esq.
Michael S. Mitchell, Esq.
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Tel.:  (202) 237-2727
Fax:  (202) 237-6131

Robert N. Weiner, Esq.
Anthony J. Franze, Esq.
**ARNOLD & PORTER LLP**
555 Twelfth Street, N.W.
Washington, DC  20004
Tel.:  (202) 942-5000
Fax:  (202) 942-5999

***Counsel for Defendants Pioneer Hi-Bred International, Inc. and E.I. Du Pont de Nemours and Company***

***Counsel for Defendant Monsanto Company***

/s/  Adam J. Levitt
Adam J. Levitt