UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HILMER SCHOENBAUM, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:05CV01108 ERW |
| E.I. DUPONT DE NEMOURS AND COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Preliminary Approval of

Settlement with Defendants E.I. DuPont de Nemours and Company and Pioneer Hi-Bred

International, Inc., Conditional Certification of Settlement Classes, Appointment of Class

Counsel,[1] and Approval of Notice to be Furnished to Settlement Classes [doc. #383]. The Court

heard arguments from the parties on this Motion on October 16, 2009.

## I.      BACKGROUND[2]

Defendant Monsanto Company ("Monsanto") develops, manufacturers, licenses, and sells

agricultural biotechnology, agricultural chemicals, and other agricultural products. At issue in this

litigation are two technologies Monsanto developed and patented that produce genetically-

modified seed products (generically, "GM seed") by transferring into crop seed one or more genes

---

[1] Although included in the title of Plaintiffs' Motion, Plaintiffs do not address, and the Court therefore does not consider, the issue of appointing class counsel.

[2] For a more in-depth discussion of Plaintiffs' claims and the procedural background of this litigation, see the Court's opinions in *Schoenbaum v. E.I. DuPont de Nemours and Co.*, 417 F. Supp. 2d 1125, 1129-33 (E.D. Mo. 2007), *vacated in part*, 2007 WL 3331291 (E.D. Mo. 2007) and *Schoenbaum v. E.I. DuPont de Nemours and Co.*, 2009 WL 1045469, at *1-*2 (E.D. Mo. 2009).

that give the resulting plants various favorable traits – specifically, Roundup Ready® corn and soybean seed, which is resistant to glyphosate-based herbicides such as Monsanto's Roundup® brand herbicide, and YieldGard® corn seed, which is resistant to root worm and the European corn borer.[3]  Monsanto also produces seed products in which it combines – or "stacks" – these traits, creating, for example, GM corn seed resistant to glyphosate herbicide and the European corn borer.

Monsanto sells its patented technology to seed producers, including Defendants E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International, Inc. (collectively, "Pioneer"), under licenses to use the gene technology to create certain GM soybean and corn seed.  Pioneer sells the GM seed developed with Monsanto's technology to retailers or growers, all of whom must likewise obtain licenses from Monsanto upon purchasing the seed products.

In March 2004, individual farmers and farming entities (collectively, "Plaintiffs") filed thirteen state court class actions – in Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, and Wisconsin – against Monsanto and Pioneer.  The parties agreed to transfer the cases to the Eastern District of Missouri, and on December 20, 2005, this Court granted the parties' joint motion to consolidate the cases.  Plaintiffs assert claims for, among other things, violations of the Sherman Act and similar state antitrust laws, alleging that Monsanto and Pioneer conspired to charge supracompetitive prices for Monsanto's licensed technologies.

---

[3] In 1997, Monsanto introduced its first YieldGard® corn seed product, with resistance to the European corn borer, and it began marketing a distinct YieldGard® corn seed product with root worm resistance in 2003.  Monsanto introduced YieldGard® Plus in 2004, which contains both traits.

In July 2009, Plaintiffs and Pioneer reached an agreement to settle Plaintiffs' claims against Pioneer. The settlement agreement provides that Pioneer will pay $2 million to Plaintiffs in exchange for a class-wide release of all claims asserted in this litigation and all potentially similar claims, the allocation of which is deferred until ninety days after Plaintiffs' claims against Monsanto are resolved. Under the terms of the agreement, Plaintiffs' counsel ("Class Counsel") act as trustees over the settlement fund, which remains subject to the Court's jurisdiction. Class Counsel are entitled to withdraw up to $175,000 for costs of notice to potential class members and for settlement administration, an amount that is not refundable to Pioneer in the event that the Settlement does not receive final approval. The agreement further provides that the costs of class notice, settlement administration, Court-approved incentive awards for the named Plaintiffs, and reimbursement of $200,000 of Class Counsel's costs will come from the settlement fund. Plaintiffs have agreed not to seek attorneys' fees from Pioneer in the absence of further recovery from Monsanto, and Pioneer has stipulated that it will not take an adverse position should Plaintiffs apply for attorneys' fees or incentive awards. Pioneer also has the option of rescinding the settlement agreement if prospective class members who opt out of the settlement farmed more than a certain aggregate number of acres during the 2009 crop year, a threshold number that is specified in a separate agreement between Plaintiffs and Pioneer.

The settlement provides for the certification of twenty-six settlement classes – a Roundup Ready® Soybean Seed Purchaser Class and a Genetically-Modified Corn Seed Purchaser class for each of the thirteen states involved in this litigation. The class period is limited to January 1, 1996 through July 14, 2009, during which putative class members must have been signatories to or otherwise subject to Defendants' Technology Agreements, and either (1) from 1998 through 2001 (inclusive), paid Monsanto a separate "technology fee" through Monsanto's seed manufacturer

licensees; or (2) from 2002 (inclusive) through the end of the class period, purchased the seed product at issue for their respective classes.

The agreement also includes provisions related to the appropriate form of notice to potential class members. Specifically, it states that notice to potential class members will be by publication, through (1) electronic banner advertisements for a sixty-day period via the Data Transmission Network ("DTN"), an electronic network of real-time weather, agricultural, and commodities markets information to which many farmers subscribe; (2) advertisements in DTN's *Snapshot* e-newsletter; and (3) half-page print advertisements in three publications widely read by farmers – *Farm Journal*, *Successful Farming*, and the Midwestern Edition of DTN's *Progressive Farmer*.

## II.   DISCUSSION

Plaintiffs request preliminary approval of the settlement with Pioneer and preliminary certification of settlement classes, for purposes of sending notice to the putative classes. Assuming the Court grants such approval, Plaintiffs also ask the Court to approve their form of notice. Monsanto contends that the next step in this litigation should be contested class certification hearings on both settlement and litigation classes.

### A.     *Preliminary Approval of the Settlement under Rule 23(e)*

Especially in the context of class actions, the federal judiciary has a strong policy of promoting and encouraging settlements between litigating parties. *See, e.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (internal citations and quotations omitted). This policy is a self-serving one, however,

in that settlements are favored to the extent they conserve judicial resources, and not where they expend them further. *See Stewart v. M.D.F., Inc.*, 83 F.3d 247, 252 (8th Cir. 1996).

Pursuant to Federal Rule of Civil Procedure 23(e), class action settlements must be approved by the court before they become effective. In order to receive court approval, the parties to a settlement must demonstrate at a hearing – generally termed a "fairness hearing" – that the proposed agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing. *See* Manual for Complex Litigation (Fourth) § 21.632 (2004); *see also, e.g.*, *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003).

At the preliminary approval stage, the "fair, reasonable, and adequate" standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies. *See, e.g.*, *White v. Nat'l Football League*, 836 F. Supp. 1458, 1466 (D. Minn. 1993); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001). In making this preliminary determination, courts should consider issues such as whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015-16 (S.D. Ohio 2001); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008). The settling parties' views as to the propriety of the settlement are also entitled to some weight. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). These important considerations notwithstanding, a proposed

settlement is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001).

From the outset, Plaintiffs' claims have indicated that Plaintiffs view Monsanto as the primary defendant, with alleged co-conspirator Pioneer as a secondary figure in the litigation. As such, it is not unreasonable for Plaintiffs to settle with Pioneer for $2 million – a relatively insignificant amount given Plaintiffs' allegations – in order to allow them to concentrate their efforts on their claims against Monsanto, especially since the settlement provides for the funding of some litigation costs to assist Plaintiffs in that endeavor. Furthermore, Plaintiffs and Pioneer have been on opposite sides of this litigation for some time, and there is no reason to believe that the settlement was negotiated at anything less than arms' length. The Court notes that there is no allocation plan; if settlement classes should be certified, however, allocating the recovery among those classes will become relatively straightforward, and if they are not, it will be a non-issue.

The Court therefore finds that the terms of the settlement would justify preliminary approval, but determining that it would be appropriate for Plaintiffs to send notice of the settlement to the proposed classes also requires that the Court find that those classes should be preliminarily certified – the subject of the next Section.

### B. Preliminary Certification of the Settlement Classes under Rule 23(a-b)

Plaintiffs contend that the Court should preliminary approve their proposed settlement classes, such that Plaintiffs may proceed with sending notice to those classes of the hearings on final settlement approval and formal class certification.

In order to be certified under Rule 23, proposed classes must meet all four requirements of Rule 23(a) and one of the three sub-sections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 614 (1997). Rule 23's standards for class certification – apart from consideration of whether the case would be manageable to try as a class action – are equally applicable and rigorous in the settlement context. *See id.* at 620 (Rule 23 provisions "designed to protect absentees by blocking unwarranted or overbroad class definitions[] demand undiluted, even heightened, attention in the settlement context.").

There is also authority finding that this same degree of Rule 23 scrutiny is appropriate in the context of preliminary or conditional certification of settlement classes. *See In re Ephedra Prods. Liab. Litig.*, 231 F.R.D. 167, 170 (S.D.N.Y. 2005). In that case, the district court noted that the 2003 amendment to Rule 23 removed a provision in the Rule stating that class certification "may be conditional." Based on that, the court concluded that the Rule 23 standards for class certification "must be rigorously applied even at this 'preliminary' stage." *Id.*

In the Court's view, however, the *Ephedra* decision is the result of understandable confusion as to the meaning of conditional certification, given that the phrase is used interchangeably to refer to two distinct concepts. The first type is conditional certification that follows a motion for class certification, where certification is conditioned on the classes meeting the Rule 23 requirements at some point in the future. *See, e.g.*, *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 405-06, 406 n.4 (S.D. Ind. 2001). This prospective certification is the problem that the 2003 Amendment sought to rectify by deleting the statement in Rule 23(c)(1)(C) that class certification "may be conditional": formal certification of classes in situations in which the court had not first ascertained that the classes met the Rule 23 requirements. *See* Fed. R. Civ. P. 23, Advisory Committee's Note on 2003 Amendments ("The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."). In other words, the Court

concludes that *Ephedra* contains an accurate statement of the law regarding conditional

certification, but only to the extent that it concerns formal, conditional certification of settlement

classes.

The other form of conditional certification is what the Court will refer to as "preliminary

certification," which is the more informal court approval that Plaintiffs request in their Motion.

This occurs in situations where class action plaintiffs seek preliminary approval of a settlement for

classes which have not yet been formally certified. The vehicle of preliminary settlement approval

exists because plaintiffs must, as a practical matter, be able to ascertain whether notifying the

classes of a proposed settlement would be wasteful; it has no effect on the court's ultimate

determination of whether a settlement should receive final court approval. *See In re New Motor*

*Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55 (D. Me. 2006); Manual for

Complex Litigation (Fourth) § 21.632 (2004).[4]  Instead, it exists only in order to allow plaintiffs

to determine whether the court believes that there are glaring deficiencies in the terms of the

settlement, and accordingly a more lenient standard applies at the preliminary approval stage than

at the final settlement approval.

---

[4] On this point, the Court found the district court's discussion of preliminary approval of
settlements in *New Motor Vehicles* especially insightful. There, the court noted that the term
"preliminary approval" may be misleading, in the sense that it is really only a determination by the
court that it is appropriate to send notice to the classes, and should not be understood to express
any real opinion as to the fairness of the settlement. 236 F.R.D. at 55-56 (internal citations
omitted). Instead, the court suggested that preliminary approval may be more accurately
understood as a finding that there is "probable cause" to proceed with notice to the class and to
schedule a fairness hearing. *Id.* at 56 n.2; *see also Nilsen v. York County*, 228 F.R.D. 60, 62 (D.
Me. 2005) ("Despite the usage of the *Manual for Complex Litigation (Fourth)*, § 21.632 (2004),
and what I have done in previous class actions following that usage, I do not characterize this
order as a preliminary fairness determination. Because a judicial declaration of 'preliminary
fairness' unjustifiably suggests a built-in headwind against objections to the settlement, I am
determining simply whether the proposed settlement agreement deserves consideration by the
class and whether the notice is appropriate.").

Preliminary certification of settlement classes is an analogous determination, in that it is not really "certification" at all. It does not follow a Rule 23 motion for certification, it has no binding effect on class members, and, even if granted, it still has no effect on the motion for class certification that the plaintiffs must make in order to bind the absent class members to the finally approved settlement. Like preliminary approval of settlements, it exists only for the sake of efficiency, in order to permit Plaintiffs, in appropriate cases, to combine notice of class certification with notice of the fairness hearing. As the Manual for Complex Litigation explains in its discussion of preliminary settlement approval:

> Once the judge is satisfied as to the certifiability of the class and the result of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members. For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.

Manual for Complex Litigation (Fourth) § 21.633 (2004). Put another way, preliminary class certification contemplates that formal class certification will be combined with the fairness hearing, and exists to permit class action plaintiffs to determine whether the court sees any obvious impediments to class certification before they proceed with noticing the hearing on settlement approval. Thus, the Court sees no reason why, if the standard for preliminary approval of a settlement's terms is lower than that for final approval, the standard for preliminary certification of settlement classes should not also be more relaxed.

Having determined that a less rigorous Rule 23 analysis applies in this context, the Court must still evaluate whether Plaintiffs' proposed classes could possibly be certified. The four Rule 23(a) requirements are: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the

class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").  Of the three options in Rule 23(b), Plaintiffs seek to certify their classes under 23(b)(3), which requires a showing of both predominance – that "questions of law or fact common to class members predominate over any questions affecting only individual members" – and superiority – that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1. Numerosity

Numerosity – the requirement that there are enough class members that joinder is impracticable – does not appear to be an issue in this case.  While there is no specific threshold number that satisfies this requirement, forty class members is generally sufficient.  *See Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (internal citations omitted).  It is undisputed that each of the proposed twenty-six classes – a soybean seed purchaser class and a corn seed purchaser class for each of the thirteen states involved in this litigation – contains, at the very least, hundreds of class members.  As such, the Court concludes that Plaintiffs will have no difficulty demonstrating the numerosity requirement when and if it comes to certification of these classes.

### 2. Commonality

This requirement of "common questions of law or fact among members of the class" is typically not difficult for class action plaintiffs to meet.  *See Mund v. EMCC, Inc.*, 259 F.R.D. 180, 183-84 (D. Minn. 2009) ("[T]he commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied.").  The Court does not consider it here, however, as it is necessarily satisfied if Plaintiffs meet the Rule 23(b)(3) predominance requirement, discussed below.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24

(1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied by [plaintiffs' exposure to defendants' asbestos products], the predominance criterion is far more demanding."); *Hanson v. Acceleration Life Ins. Co.*, 1999 WL 33283345, at *9 (D.N.D. 1999) ("Rule 23(a)(2)'s commonality requirement is subsumed under the more stringent predominance requirement of Rule 23(b)(3).").

### 3. Typicality

Typicality refers to the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Simply put, this requires the court to consider whether "other members of the class . . . have the same or similar grievances as the plaintiff," and the requirement is "fairly easily met" where the other class members' claims are similar to the named plaintiffs'. *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (internal quotations and citations omitted).

Under this standard, some factual differences in the class members' claims are permissible provided that the representatives' claims "arise[] from the same event or course of conduct as the class claims, and give[] rise to the same legal or remedial theory." *Id.* Thus, the typicality requirement can be satisfied even though the named plaintiffs and class members purchased a number of different products from the defendant under varying terms and conditions. *See Se. Mo. Hosp. v. C.R. Bard, Inc.*, 2008 WL 4372741, at *4 (E.D. Mo. 2008) (internal quotations and citations omitted); *see also DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174-75 (8th Cir. 1995) (typicality met where class members held different mortgage instruments but sought the same form of relief). Likewise, differences among class members and named plaintiffs in terms of the amount or type of damages do not preclude a finding of typicality. *See Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 262 (D. Minn. 2001).

The Court concludes that Plaintiffs have sufficiently demonstrated typicality at this stage, in that the claims of the named Plaintiffs – purchasers of soybean and corn seed with Monsanto's Roundup Ready® technology and purchasers of corn seed with Monsanto's YieldGard® technology, in each of the thirteen states involved in this litigation – are all based on "the same event or course of conduct" and share "the same legal or remedial theory" as the claims of the absent class members. *Alpern*, 84 F.3d at 1540. Specifically, all of the claims of the named Plaintiffs and class members assert that Monsanto and Pioneer entered into anticompetitive agreements to obtain supracompetitive prices for Monsanto's GM seed products (i.e., the claims premise liability on the same course of conduct), for which they are liable to Plaintiffs because such conduct allegedly violates the Sherman Act and, for certain classes, relevant state antitrust laws (i.e., the claims for relief are based on the same legal or remedial theory). None of these claims requires an individualized inquiry into the named Plaintiffs' or the class member's individualized circumstances in order to determine whether Defendants' conduct violated the relevant antitrust law.[5] *See Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (typicality not established where "proof of a violation requires individualized inquiry").

Moreover, as the above authorities illustrate, typicality does not require that the representative of each class seeks the same type of relief as all members of the class she seeks to represent. Thus, although Plaintiffs seek damages for 1998-2001 GM seed purchasers and only declaratory and injunctive relief for 2001-2009 purchasers, this does not destroy typicality because it does not affect the factual basis for Sherman Act liability or the legal theory on which that liability is premised.

---

[5] There is, however, the argument that Plaintiffs' proof of antitrust impact will require individualized inquiries, a possibility that the Court addresses below in its discussion of the predominance requirement.

Likewise, Plaintiffs are not required to present a class representative who purchased each of the specific products at issue in order to satisfy this requirement. Although Plaintiffs assert claims based on the purchase of a number of different sub-products containing Monsanto's GM seed trait technologies, a class representative's claims are not rendered atypical because she did not purchase the same corn or soybean seed product as all the members of her class. For a named Plaintiff seeking to represent the Kansas corn seed purchaser class, for example, it suffices that she purchased a corn seed product in Kansas containing the applicable trait technology.

Accordingly, the Court finds that Plaintiffs have sufficiently established, for purposes of preliminary certification of these classes, that the named Plaintiffs' claims are typical of the classes they seek to represent.

### 4. Adequacy of Representation

The adequacy requirement – that "the representative parties will fairly and adequately protect the interests of the class – is met if (1) "the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit"; and (2) "the interest of the class representative is not antagonistic to or in conflict with other members of the class." *See Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 544 (W.D. Mo. 2002), *aff'd*, 339 F.3d 1001 (8th Cir. 2003). The purpose of the adequacy prong of Rule 23(a) is "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

The Court believes that Plaintiffs' counsel meet the standard of competence and vigorous representation. It is undisputed that Plaintiffs' counsel are experienced in class action and antitrust litigation. Moreover, there is a presumption that class action counsel is adequate, and

there has been no proof to the contrary thus far in this case. *See Morgan v. United Parcel Serv. of N. Am., Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996).

Furthermore, the Court does not believe at this stage that the differing remedies sought by the 1998-2001 class members and the 2002-2009 class members presents a conflict of interest that would preclude class certification. According to Plaintiffs, the decision only to pursue claims for declaratory and injunctive relief for the post-2001 class members – and to agree to a settlement which forecloses the possibility of those class members obtaining damages from Pioneer – was based on a change in Monsanto's pricing policy that made damage claims for these class members, in the opinion of Plaintiffs' counsel, less viable as a matter of antitrust law. Whether prospective class members choose to agree with that position is their decision, and that is the reason why notice must be sent to the putative classes prior to the Rule 23(e) fairness hearing.[6]

The Court therefore concludes that the adequacy prong has been satisfied for purposes of preliminary certification, as Plaintiffs' counsel and the named Plaintiffs both appear to be adequate representatives of the absent class members.

### 5. Superiority

In order to determine whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy," Rule 23(b)(3) directs courts to consider the following factors:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

[6] Although the inquiry into final approval of the settlement is distinct from that regarding class certification, the Court will also need to consider the propriety of this release of damages claims in deciding whether the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2).

( C)    the desirability or undesirability of concentrating the litigation of the
        claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

When certifying classes for purposes of settlement, however, courts need not consider sub-section

(D) concerning the manageability of a class action. *Amchem*, 521 U.S. at 591. Although the

argument in favor of class action treatment is most compelling where individual suits would in

effect have negative value because litigation costs would outweigh any potential recovery, *Nelson*

*v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 379 (E.D. Ark. 2007), a class action is generally

superior so long as it will "limit duplicative litigation, limit the burden on this and other courts,

and provide a uniform result for similarly situated parties." *Lockwood Motors, Inc. v. Gen.*

*Motors. Corp.*, 162 F.R.D. 569, 582 (D. Minn. 1995).

The Court finds that the superiority analysis in this case is ultimately dependent on the

predominance issue. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004) ("[T]he

predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple

reason that, the more common issues predominate over individual issues, the more desirable a

class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims."). To the extent

Plaintiffs are correct that they can demonstrate predominance, they are also correct that a class

action is the preferred vehicle for litigating the class members' claims. Furthermore, the present

suit was originally a number of state court actions that were ultimately consolidated in this Court,

which further indicates that class action treatment is superior.

### 6. Predominance

The predominance requirement in Rule 23(b)(3) requires that "questions of law or fact

common to class members predominate over any questions affecting only individual members."

As a general matter, predominance is not difficult to establish in cases alleging an unlawful

conspiracy in restraint of trade. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."). This is because in most antitrust cases, "proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).

That said, predominance is not satisfied where proof of antitrust impact – a prerequisite for recovering treble damages under § 4 of the Clayton Act – calls for an individualized inquiry instead of proof common to the class. *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005) (affirming district court finding that predominance not met because proof of injury involved particularized inquiries into individual transactions); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) ("[T]he task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members."); *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 302-03 (5th Cir. 2003) ("[W]e have repeatedly held that where the fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance."). Thus, plaintiffs seeking to recover treble damages for an antitrust violation "must show that both conspiracy and impact can be proven on a systematic, class-wide basis." *Sample v. Monsanto Co.*, 218 F.R.D. 644, 650 (E.D. Mo. 2003), *aff'd sub nom. Blades*, 400 F.3d 562.

In *Sample / Blades*, a Sherman Act class action against Monsanto, the district court refused certification of two plaintiff classes – one nationwide class each for Roundup Ready® soybean seed purchasers and Yieldguard® corn seed purchasers – due to their failure to meet the

predominance requirement.  *Sample*, 218 F.R.D. at 649-52 (E.D. Mo. 2003).  There, the plaintiffs sought to prove antitrust impact by demonstrating that GM seed purchasers were required, as a result of the alleged conspiracy, to pay a premium for seed products with the relevant Monsanto-licensed trait technologies.  *Id.* at 650.  The district court found – and the Eighth Circuit agreed – that the plaintiffs, having purchased GM seed in a wide variety of markets on differing terms, could not prove impact through common proof.  *Id.* at 650-52; *Blades*, 400 F.3d at 572-74.  As the Eighth Circuit stated:

> The wide variation in list prices among hybrids and the pricing of some GM hybrids with zero or negligible list price premiums, as compared with corresponding non-GM hybrids, would require the purchasers of some hybrids to prove injury through evidence that would vary according to individualized market conditions and thus would not be shared in common with the rest of the proposed classes.

*Blades*, 400 F.3d at 572.

The factual similarities between Plaintiffs' proposed classes and those at issue in *Sample / Blades* are evident, and were Plaintiffs proceeding under precisely the same theory as the plaintiffs in that case, *Blades* would be persuasive in foreclosing the possibility of certifying these settlement classes.  Plaintiffs claim, however, that their methodology for proving damages addresses the common proof problems that prevented certification of similar classes in *Sample / Blades*.  Specifically, Plaintiffs state that they will demonstrate class-wide antitrust impact through Monsanto's imposition of a uniform, non-discountable "technology fee" that accompanied all of the GM seed purchases by those class members seeking damages.  Plaintiffs therefore claim that the individualized inquiries that made class treatment untenable in *Sample / Blades* are not present here, in that the technology fee did not vary among class members and no individualized proof of damage will be necessary.

The Court finds that Plaintiffs' explanation of their antitrust impact theory is simply too vague and undeveloped to allow this Court to conclude that preliminary class certification is justified. In particular, the Court is concerned with how the imposition of the technology fee – even if it is uniform and non-discountable – would permit Plaintiffs to demonstrate antitrust impact with common proof where, for example, the total cost of a bag of GM seed, including the technology fee, is still less than or equal to the price of a bag of conventional seed. Although Plaintiffs claim that this inquiry is not necessary for the Kansas and Wisconsin state antitrust claims, because the measure of damages under those statutes is the full price paid for the affected product, the Court is not convinced, based on the limited briefing of this issue, that the remedy under those statutes affects the means or necessity of proving antitrust impact.

In sum, the Court is not prepared to find at this stage in the case that Plaintiffs' proposed classes can be certified, based on Plaintiffs' failure to sufficiently distinguish prior case authority addressing many of the same issues presented here. As such, the Court does not consider whether it should approve Plaintiffs' proposed form of notice to the putative classes.

### C.      *Monsanto's Position on Class Certification*

Monsanto contends that instead of permitting Plaintiffs and Pioneer to proceed unopposed on certification of settlement classes, the next step in this litigation should be contested certification proceedings on both settlement and litigation classes. Plaintiffs and Pioneer argue that Monsanto has no right to involve itself in issues related to their proposed settlement.

It is well-established that absent a showing of legal prejudice, a non-settling defendant has no standing to object to the terms of a settlement. *See, e.g.*, *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1001-02 (8th Cir. 1990) (stating general rule) (internal citations omitted); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1429 (D. Minn. 1993)

(rule applies in class action context). Monsanto contends, however, that it is not objecting to the terms of the settlement *per se*; instead, it claims that it has merely proposed a more efficient and fairer procedure – an adversarial hearing – by which the Court should rule on certification of the settlement classes. Monsanto claims that the Court is more likely to certify Plaintiffs' proposed settlement classes if there is no party contesting certification. Then, if that in fact is the result, Monsanto argues that it will be more difficult to oppose certification of similar litigation classes when and if this litigation comes to that point, or, in the alternative, it could put the Court in a position in which it would be forced to make inconsistent determinations with respect to class certification.

The Court is skeptical of Monsanto's attempts to distinguish the general rule regarding non-party objections to settlements – Monsanto *is* objecting to the settlement, insofar as the "procedural proposal" is directed at bringing about circumstances in which the settlement is less likely to receive court approval – yet Monsanto does make salient and persuasive arguments concerning the benefits of an adversarial proceeding in connection with class certification, at least in the somewhat unique circumstances of this case. While it is one thing for Plaintiffs and Pioneer to argue that Monsanto does not have the *right* to involve itself in settlement-related proceedings (which it almost certainly does not), it is entirely another to state that the Court may not, in the interests of consistency and efficiency, permit Monsanto to represent an opposing position on class certification.

The Court's foremost concern is the plodding pace with which this litigation is moving forward. Rule 23 provides that "[a]t an *early practicable time after a person sues* . . . as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). Plaintiffs' claims were consolidated in this Court in

December 2005. It is now November 2009, and the Court still awaits a motion from Plaintiffs for class certification. It is no longer early in this litigation, and the Court believes that Plaintiffs have had more than a practicable amount of time to obtain the required discovery and establish their arguments in favor of class certification. The Court sees no reason why, if Plaintiffs desire to pursue litigation class certification at some point in this litigation, they should not do so in conjunction with settlement class certification.

There is, at the very least, considerable overlap between the proposed settlement and litigation classes, making it more efficient and potentially more accurate to address both certification inquiries simultaneously. The underlying message of Plaintiffs' arguments against Monsanto's participation appears to be that the Court is less likely to certify the settlement classes if Monsanto is involved. Although the Court credits Plaintiffs and Pioneer for coming to a mutually agreeable settlement that would, to some degree, streamline this litigation, the Court has no wish to certify classes for settlement, with the knowledge that it may reach a different result on certifying the same or similar classes for litigation. It appears that the pivotal issue with respect to certification of both sets of classes is the Rule 23(b)(3) predominance inquiry – as discussed above, focused on whether Plaintiffs can demonstrate antitrust impact with proof common to the class – and the Court finds that the most expedient and accurate means of making that determination is with Monsanto's involvement.

Plaintiffs and Pioneer have not demonstrated that they would be substantially prejudiced by moving forward with contested certification hearings. Both argue that a proceeding on litigation class certification would delay final approval of their settlement for upwards of a year, due to the more extensive briefing required, the necessity of additional fact discovery, and the possibility of an interlocutory appeal. These arguments seem to presuppose that settlement class

certification is less rigorous than litigation class certification – as discussed above, a position that the Supreme Court has clearly refuted.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The Court is required to apply to the same degree of scrutiny to all classes that Plaintiffs offer for certification, and it is therefore unclear why Plaintiffs claim that settlement class certification could take place immediately, but not litigation class certification.  Plaintiffs have been involved in this litigation for approximately five years, and the Court finds that it is both reasonable and necessary to require Plaintiffs to move forward with litigation class certification at this point.

Pioneer also claims that it would be prejudiced in that it would incur additional attorneys' fees that it would have avoided by extracting itself from this litigation, which it claims was its primary motivation for entering into the settlement agreement.  While the Court is sympathetic to Pioneer's predicament, it does not justify less rigorous – and potentially less accurate – class certification proceedings, which is what could result if the Court accepted Pioneer's argument.

In short, this litigation has been pending too long to further postpone consideration of certifying litigation classes.  It is the Court's duty to balance the often competing goals of resolving matters promptly and resolving matters by the most accurate means possible.  The Court finds that these goals are best served by requiring Plaintiffs to demonstrate that they will be able to certify classes for both settlement and litigation, instead of permitting Plaintiffs to proceed solely on settlement-related issues and address litigation class certification at a later stage.[7]

---

[7] The Court notes that should classes be certified for purposes of settlement, Monsanto will not have any involvement in determining whether Plaintiffs and Pioneer are entitled to final approval of the settlement under Rule 23(e).

### III. CONCLUSION

The Court concludes that Plaintiffs' Motion will be denied. Although preliminary approval of Plaintiffs' settlement with Pioneer would be warranted insofar as it satisfies the low standard of being within the range of possible final approval, the Court is not prepared to preliminarily approve Plaintiffs' proposed classes for the purpose of sending notice of the final fairness hearing. Plaintiffs have not adequately established that their methodology for proving antitrust impact with common proof will allow them to meet Rule 23(b)'s predominance requirement, in light of binding authority refusing to certify factually similar classes. Moreover, the Court finds that as Plaintiffs pursue their claims, the next step must be motions to certify both settlement and litigation classes, as separating those determinations would only serve to draw out this litigation further and could potentially lead to inconsistent results.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International, Inc., Conditional Certification of Settlement Classes, Appointment of Class Counsel, and Approval of Notice to be Furnished to Settlement Classes [doc. #383] is **DENIED**. Plaintiffs and Monsanto shall submit an Amended Case Management Order no later than **December 31, 2009** with a schedule for proceeding with settlement and litigation class certification concurrently and expediently.

Dated this <u>8th</u> Day of <u>December</u>, <u>2009</u>.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE